### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

WHALECO INC.,

   *Plaintiff*,

 v.

SHEIN TECHNOLOGY LLC et al.,

   *Defendants*.

Civil Action No. 23-3706 (TJK)

### <u>MEMORANDUM OPINION & ORDER</u>

  The parties in this case are competing online marketplaces that offer "ultra-fast fashion" products for sale, most of which are manufactured by third-party suppliers in China. Plaintiff—which does business under the name "Temu"—suggests that its rise has posed a competitive threat to Defendants, whom the parties refer to collectively as "Shein." Temu alleges in its complaint that Shein, to respond to that threat, is engaging in an unlawful, multifaceted campaign to interfere with its growth, cut off its third-party suppliers, and steal its customers by abusing the American intellectual property protection regime, infringing on its copyrights, and other improper means.

  Temu has moved for a preliminary injunction. For purposes of that motion, it focuses on the merits of its claim that Shein is abusing the Digital Millennium Copyright Act, or the DMCA. Shein does so, Temu asserts, by submitting to Temu scores of meritless DMCA takedown notices that allege, without the required good-faith basis, that photographs of products for sale on Temu's site are infringing copyrighted material. These notices all but require Temu to promptly remove the photographs and related products from its site, which harms both Temu's business and that of its third-party suppliers. Temu's proposed preliminary injunction would require, among other

things, that Shein provide proof that it owns the copyrighted material or is acting on behalf of the copyright's owner along with each takedown notice it submits to Temu while this suit is pending.

Temu has also moved to seal certain materials accompanying its motion for a preliminary injunction, as well as to designate those materials as "outside attorneys' eyes only," thereby restricting Shein's outside counsel from sharing it with anyone at Shein.  Those materials are declarations executed within the last month by five of Temu's third-party suppliers in China who claim to own the rights to photographs that appeared on Shein's website without their permission.  In two such cases, the suppliers also assert that photographs accompanying their products for sale on Temu's website were the subject of meritless DMCA takedown notices that caused the removal of those products from the site.  Each of these suppliers requests that its specific information and identity not be disclosed to Shein, out of concern that Shein will retaliate against it.

Temu also seeks the same sealing and "outside attorneys' eyes only" designation for a declaration of an attorney it hired to interview these five third-party suppliers, as well as eight other suppliers in China who were unwilling to execute declarations, purportedly because they fear retaliation from Shein.  These suppliers permitted information they provided to be included in the attorney's declaration, but not their names.  The declaration summarizes these interviews, during which the suppliers purportedly described how Shein has been interfering with their copyrighted photographs and how it has otherwise sought to dissuade and intimidate them from working with Temu.  The attorney's declaration also explains that these eight anonymous suppliers, like those that provided declarations, have requested that the information in the declaration not be disclosed to Shein, even though the suppliers are not named.

For the below reasons, the Court will deny Temu's motion to seal and to designate these materials as "outside attorneys' eyes only."

*    *    *

First, Temu requests that the above-described material be designated as "outside attorneys' eyes only."  Courts have discretion under Federal Rule of Civil Procedure 26 to seal or otherwise restrict materials to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c); *see Doe v. District of Columbia*, 697 F.2d 1115, 1119 (D.C. Cir. 1983) ("In general, district courts have broad authority, under Fed. R. Civ. P. 26, to distinguish reasonable and productive uses of the discovery procedures from abusive invocations of those procedures and to design protective orders to curtail the latter." (capitalization altered)).  But requesting that a lawyer may not share these types of materials with his client is an extraordinary request.  The D.C. Circuit has instructed that courts must be wary of "issuing protective orders that restrict the ability of counsel and client to consult with one another during trial" or in preparation for trial, given that they "arguably trench upon constitutional interests at least as important as those infringed by restrictions on public dissemination of information."  *Id.*  Thus, the Circuit has instructed that a protective order restricting material that an attorney can share with her client may issue only if a three-part test is satisfied: (1) "the harm posed by [disclosure] [is] substantial and serious;" (2) "the restraining order [is] narrowly drawn and precise;" and (3) "there [is] no alternative means of protecting the public interest which intrudes less directly on [attorney-client relations]."[1]  When the party opposing the protective order would not be prejudiced by the

---

[1] *Id.* at 1120 (some alteration in original) (quoting *In re Halkin*, 598 F.2d 176, 191 (D.C. Cir. 1979), *overruled on other grounds by Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31 (1984)). The Circuit in *Doe* adopted *Halkin*'s test for whether a protective order restricting public disclosure of information gained through discovery violated the First Amendment which, soon after, was overruled by the Supreme Court in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31 (1984).  The *Doe* test is thus "of questionable validity."  *Klayman v. Jud. Watch, Inc.*, 247 F.R.D. 19, 24 n.2 (D.D.C. 2007).  Courts in this District, however, have continued to apply *Doe* given that "*Halkin* was a First Amendment decision, and the Court in *Seattle Times* overruled it on those grounds

restriction, the need to show harm is somewhat lessened.  *See D'On-ofrio v. SFX Sports Grp., Inc.*, 256 F.R.D. 277, 280 (D.D.C. 2009) ("[T]here need not be a great deal of harm to justify protecting information when doing so would not prejudice the party who will be prevented from seeing the information.").

While the potential harm to Temu's third-party suppliers is troubling, on the record here, the Court finds that Temu has not satisfied the test for the drastic relief it seeks.  Starting with the first factor, it has not sufficiently shown that "substantial and serious" harm will befall these suppliers should the material at issue be disclosed to Shein.

To begin, in the case of the eight third-party suppliers who refused to let their names be included in the attorney's declaration and who declined to sign declarations themselves, Temu has not shown that disclosing the attorney's declaration to Shein would allow Shein to identify them. The specific allegations in Temu's publicly filed complaint about Shein's recent purported detention and interrogation of suppliers, *see* ECF No. 1 ¶¶ 162–68, also recounted in the declaration, already strongly suggested to Shein that some suppliers cooperated with Temu in connection with this litigation, even if the declaration would confirm that to be the case.  Whether those allegations are specific enough for Shein—with or without the declaration—to specifically identify them remains unclear.  And as for the other suppliers that levy more general allegations about copyright infringement, it seems unlikely to the Court that Shein will be able to identify them from the attorney's declaration.  For perspective, Temu alleges in its complaint that Shein has 10,000 potential

---

alone," and "*Doe*, on the other hand, was not a First Amendment decision and expressly did not rely on the First Amendment justification in *Halkin* when it adopted that decision's criteria for analyzing [attorney's eyes only] protective orders."  *Keaveney v. SRA Int'l, Inc.*, No. 13-cv-855 (EGS/GMH), 2017 WL 1842544, at *3 & n.2 (D.D.C. May 3, 2017).  This Court will do the same.

suppliers and that over 100,000 new images are uploaded to its U.S. site every day.  ECF No. 1 ¶¶ 28, 37.

But even assuming that disclosure to Shein of the material at issue would allow it to identify all the pertinent third-party suppliers, the evidence that those suppliers would face "substantial and serious" harm tied to that disclosure is wanting.  No doubt, damage to a third party's property interest can amount to such harm.  *United States v. Hubbard*, 650 F.2d 293, 319 (D.C. Cir. 1980).  And, as noted above, some allegations, especially in the attorney's declaration, are unsettling.  But here, as for the five suppliers who signed declarations, their statements are conclusory and vague about why and how they think Shein would retaliate against them if their identities were revealed.[2]  Indeed, one of the suppliers represents that—rather than hiding from Shein—he filed a complaint against Shein for the copyright violation described in his declaration, and the supplier does not say that Shein retaliated in response.  ECF No. 28-12 at 2.  As for the attorney's declaration, it too is of limited persuasive value, because the other eight third-party suppliers with purported first-hand knowledge of the events it describes were apparently unwilling to sign sworn statements of their own.[3]  Without more, the Court is hard pressed to conclude that the risk of harm if the material at issue is revealed to Shein is "substantial and serious."  *See Dish Network LLC v. Sonicview USA,*

_____

[2] *See* ECF No. 28-9 at 2 ("Shein has a great power in Guangzhou and has a strong influence in the entire industry.  We are a local company in Guangzhou and only run a small business.  I do not want to openly conflict with them and cause them to make trouble for us."); ECF No. 28-10 at 2 ("We do not want Shein to find out about our visit and our declaration, as we are afraid that it might affect our business.  After all, Shein has huge influence in the apparel industry."); ECF No. 28-11 at 2 ("[A]s this industry is rather small, we are concerned about potential retaliation from Shein once they become aware our statement."); ECF No. 28-13 at 2 ("Shein is a large company and we are a small business.  I am worried that we will be suppressed by Shein if the contents of this declaration are known by Shein.").

[3] *See Keaveney v. SRA Int'l, Inc.*, No. 13-cv-855 (EGS/GMH), 2017 WL 1842544, at *4 (D.D.C. May 3, 2017) ("statements of counsel . . . insufficient to justify infringement of [party's] 'powerful interest' in consulting with their counsel as this litigation progresses.").

*Inc.*, No. 9-cv-1553 (NLS), 2009 WL 3713685, at *2–3 (S.D. Cal. Nov. 4, 2009) (removing attorneys' eyes only designation for the names of confidential informants because claims that informants had been "harassed and intimidated" were based on hearsay and not specific enough to justify that designation).[4]

The Court acknowledges that, as described above, Temu alleges in the complaint that Shein is engaging in a far-ranging effort to intimidate its third-party suppliers and retaliate against them for doing business with Temu.  And if so, it would be understandable if the suppliers here were reluctant to either sign their own declarations or say more in them.  But allegations in a complaint are no substitute for sworn, detailed statements from those who fear retaliation—or other concrete evidence relating to the possibility of retaliation—to back up an unusual request like Temu's.[5]

The Court also must consider the impact on Shein if it were to grant Temu's request to designate the material at issue as "outside attorneys' eyes only," which plays a significant role here.  Temu bases its preliminary injunction motion on the information in these declarations.  And Temu can hardly quarrel with the general proposition that because it has placed that information

---

[4] The situation here is different from that in *Dish Network* insofar as alleged threats of retaliation there could not be tied "to the Defendants or to the facts of [that] case."  *See* 2009 WL 3713685, at *3.  Still, as in that case, the allegations of retaliation here are either vague and conclusory, or offered by a declarant without first-hand knowledge.  *See id.*

[5] Even taking the allegations in the complaint at face value, they raise the question of whether any retaliation the third-party suppliers might face going forward would be caused by Shein receiving the material at issue rather than simply because the suppliers list their products for sale on Temu.  Temu alleges that Shein is *already* retaliating in significant ways against its suppliers—including some at issue here—merely for doing business with it.  So even if the Court could credit these allegations, in some sense they would make it more difficult to determine whether disclosure of the material at issue would cause harm to the suppliers that would not have happened—or is not already happening—otherwise.  Similarly, in that case, it would be harder for the Court to determine whether Temu itself would "suffer because [it] will lose the cooperation" of those or other suppliers, since "despite [those] past threats," the suppliers would "have continued to cooperate" with Temu.  *See Dish Network*, 2009 WL 3713685, at *3.

"at issue," Shein is "entitled to confront and contest" it.  *See Tama Plastic Indus. v. Pritchett Twine & Net Wrap, LLC*, No. 11-cv-783 (JMS/DKL), 2012 WL 1912578, at *4 (S.D. Ind. May 25, 2012).  But the parties disagree sharply about whether Shein can meaningfully do so if the material at issue is designated "outside attorneys' eyes only."  The Court agrees with Shein that its ability to respond to the preliminary injunction motion would be prejudiced if the Court granted Temu's request, reinforcing the need for Temu to show substantial, serious harm.

Temu mainly argues that Shein "need not know the identity of or other information about" the third-party suppliers because it "need only provide proof of its ownership" of the copyrighted works referred to in the material at issue to rebut Temu's claims, which it should already have for the DMCA notices it submitted.  ECF No. 28 at 7.  But that argument does not get Temu very far.  To begin, it only applies to two of the thirteen suppliers at issue, because only two allege that Shein submitted a DMCA takedown notice that affected them and specify the photograph and product at issue.  ECF Nos. 28-11, 28-12.[6]  These two suppliers assert that they own the copyright to photographs of products that they advertised on Temu's website, only to have Shein's meritless takedown notices cause the removal of their product listings.  In its motion for a preliminary injunction, Temu holds these two suppliers out as "representative examples showing Shein's lack of ownership of the works asserted in its DMCA notices" along with the "retaliatory . . . nature" of those notices.  ECF No. 28-2 at 13–14; *see* ECF Nos. 28-11, 28-12.  Neither party is very specific about whether and how Shein's outside counsel could, as a practical matter, rebut these allegations without disclosing the declarations to anyone at Shein.  Shein's outside counsel claims that doing so would be impossible.  ECF No. 35-2 at 6–7.  Temu, it seems, would have Shein's outside

---

[6] The attorney's declaration also includes allegations from two additional third-party suppliers that make general allegations along these lines.  *See* ECF No. 28-8 at 6.

counsel provide the Court with proof of ownership for every notice Shein has ever sent Temu. ECF No. 28 at 7; ECF No. 36-2 at 14.  But there are practical questions about the viability of this approach, given the seven days from today Shein has to respond to the motion and the tens of thousands of DMCA takedown notices at issue.  ECF No. 28-5 ¶ 10.  Even putting those issues aside, without being informed about the specific allegations put forth by Temu—including the specific photographs, products, and suppliers at issue—in the Court's view, it seems likely that Shein would still be at a disadvantage in directly rebutting them, rather than simply offering a good-faith basis for its own copyright ownership (or that it was acting on behalf of the owner) that its notices required.

That leaves the allegations in the other third-party suppliers' declarations, as well as the attorney's declaration.  For these, Temu makes essentially no attempt to explain how outside counsel for Shein could investigate and rebut these allegations without consulting their client.  The remaining three supplier declarations do not allege wrongful takedown notices.  Instead, Temu argues they show that suppliers' "rights in the product images were infringed by Shein" when Shein used their images for other listings without permission, thereby "casting doubt on whether Shein actually owns the IP asserted in its DMCA notices." ECF No. 28-2 at 15.  The Court cannot fathom any way in which Shein's outside counsel could rebut these allegations on their own, because the photographs at issue could relate to any of the millions of products that appear on Shein's website, not just those for which it sent a takedown notice.

For its part, the attorney's declaration recounts how, according to the third-party suppliers, Shein has been interfering with their copyrighted photographs and has sought to dissuade and intimidate them from working with Temu in various ways.  *See* ECF No. 28-8 at 9–10.  Temu leverages these allegations in its preliminary injunction motion as evidence of "Shein's campaign of

suppression and unprecedented intimidation against the sellers" alongside its "bad-faith tactics to thwart DMCA compliance."  ECF No. 28-2 at 29 (capitalization and emphasis altered).  And of course, Temu needs to make out a likelihood of success on the merits of its DCMA claim in connection with its preliminary injunction motion.  Evidence of bad faith is important to the merits of Temu's DMCA claims, which require a showing that Shein made knowing and material misrepresentations in connection with its takedown notices.  *See* 17 U.S.C. § 512(f).  Temu declares that Shein does not need these details because it should know whether it detained and interrogated its suppliers.  ECF No. 36-2 at 14–15.  But it seems obvious that to keep from Shein the material at issue, including all the particulars of the allegations that Temu has put before the Court—even if disclosing them to Shein would hint at some of the suppliers' identities or confirm their involvement—would hamstring its outside counsel's ability to investigate and counter them.

The remaining *Doe* factors are a wash.  The proposed "outside attorneys' eyes only" designations are, on the whole, reasonably narrowly drawn and precise under the circumstances.  Temu requests the entirety of the declarations described above be so designated, not just specific information that could identify the third-party suppliers.  And although courts are hesitant to issue overbroad "blanket" protective orders, *see Klayman v. Jud. Watch, Inc.*, 247 F.R.D. 19, 24 (D.D.C. 2007), there is no obvious way to narrow the requests further, because the information in the declarations that would be valuable to Shein in rebutting the allegations is the same information that could suggest the suppliers' identities.  On the other hand, the final factor—the availability of alternative means of protecting the public interest—cuts a little the other way, in favor of disclosure to Shein.  Other means—such as sanctions on Shein if appropriate—may be available to protect the interests of these specific suppliers and the public interest, while still adequately allowing Shein the chance to rebut the allegations against it.

In sum, the Court is sympathetic to the concerns raised by Temu's motion.  But Temu has not shown the requisite "substantial and serious" threat of harm necessary to justify restricting the ability of outside counsel to consult their client about the material at issue.  And weighing the effects of the restriction on Shein's ability to rebut the allegations against it and the centrality of those allegations to Temu's motion for a preliminary injunction—which though arguably of "limited scope" would still be an "extraordinary remedy"[7]—the Court finds that Temu has not justified an "outside attorneys' eyes only" designation for the material at issue.

Second, Temu also requests that the material at issue be placed under seal.  For many of the same reasons, the Court will also deny this request.  While there is a "presumption in favor of public access" for materials submitted to the Court on which it bases its decisions, that presumption of public disclosure may be overcome by a showing that one or more of the *Hubbard* factors weighs strongly against public access.  *See Hubbard*, 650 F.2d at 317–22.  These factors are "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings."  *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (quotation omitted).  Many of these factors tip slightly in Temu's favor.  The record does not suggest that the public has a great interest in the material at issue, and it would not be deprived of information that was previously publicly accessible.  And the Court is mindful that "where a third party's property and privacy rights are at issue the need for minimizing intrusion is especially great and the public interest in access to materials which have never been judicially

---

[7] *See* ECF No. 36-2 at 16; *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

determined to be relevant . . . is especially small." *Hubbard*, 650 F.2d at 319.  But Temu has made no showing that sealing it from the public is necessary once it is disclosed to Shein.

\*     \*     \*

For all the above reasons, it is hereby **ORDERED** that Temu's Sealed Motion for Leave to File Document Under Seal, ECF No. 28; Shein's Sealed Consent Motion for Leave to File Documents Under Seal, ECF No. 35; and Temu's Sealed Consent Motion for Leave to File Document Under Seal, ECF No. 36, are **DENIED WITHOUT PREJUDICE**.  It is further **ORDERED** that the Clerk of Court shall file on the public docket ECF Nos. 28, 28-1, 28-2, 28-5, 28-8, 28-9, 28-10, 28-11, 28-12, 28-13, 35, 35-1, 35-2, 36, 36-1, and 36-2.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: January 29, 2024