**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| WHALECO INC., | |
| Plaintiff, | Case No. 1:23-cv-03706-TJK |
| v. | |
| SHEIN TECHNOLOGY LLC, | |
| ROADGET BUSINESS PTE. LTD., | |
| Defendants. | |

**<u>DEFENDANT ROADGET BUSINESS PTE. LTD.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .....................................................................................................................3

     A.     The Parties ...........................................................................................3

     B.     Litigation History................................................................................4

ARGUMENT .........................................................................................................................5

I.     TEMU'S COUNT I FAILS TO STATE A CLAIM FOR FALSE DMCA
TAKEDOWN NOTICES UNDER 17 U.S.C. § 512(F) ......................................5

II.     TEMU'S COUNT II FOR COPYRIGHT INFRINGEMENT DOES NOT
ALLEGE COPYING OF ANY PROTECTIBLE ELEMENTS OF TEMU'S
COPYRIGHTS .........................................................................................7

III.     TEMU'S COUNT III MUST BE DISMISSED BECAUSE THERE IS NO
RIGHT OF ACTION FOR ALLEGED INACCURATE COPYRIGHT
REGISTRATIONS .................................................................................10

IV.     TEMU HAS NOT ALLEGED PLAUSIBLE FACTS SUPPORTING COUNT IV
FOR TRADE DRESS INFRINGEMENT ........................................................11

     A.     Temu Has Not Sufficiently Pled A Valid And Non-Functional Trade Dress........11

     B.     Temu Has Not Sufficiently Pled Secondary Meaning...........................................12

     C.     Temu Has Not Sufficiently Pled A Likelihood Of Confusion...............................14

V.     TEMU'S COUNT V AND VI FOR TRADE SECRET MISAPPROPRIATION
FAILS FOR MULTIPLE REASONS.................................................................15

     A.     Temu's Trade Secret Claims Are Based Exclusively On Foreign Conduct
Over Which The DTSA And The DCUTSA Are Inapplicable .............................15

     B.     Temu Has Not Pled Facts To Establish Any Protectable Trade Secret .................17

     C.     The Trade Secret Claims Also Fail Because Temu Has Not Alleged
Sufficient Efforts To Safeguard The Purported Trade Secrets .............................19

     D.     Temu Does Not Allege Plausible Facts Showing Acquisition, Disclosure
Or Use Of The Purported Trade Secrets ...............................................................20

i

VI.   TEMU'S ANTITRUST CLAIMS FAIL FOR LACK OF SUBJECT MATTER
      JURISDICTION AND FAILURE TO STATE PLAUSIBLE CLAIMS FOR
      RELIEF (COUNTS VII-XIII) ................................................................................20

      A.   The Court Lacks Subject Matter Jurisdiction Over Temu's Antitrust
           Claims .................................................................................................................20

           1.   The Alleged Foreign Conduct Is Not "Import Commerce" ......................22

           2.   The Alleged Foreign Conduct Did Not Have A "Direct,
                Substantial, and Reasonably Foreseeable Effect" on U.S.
                Commerce That Proximately Caused Temu's Alleged Injury ..................23

                (a)   Temu Has Not Alleged Substantial Domestic Harm ....................23

                (b)   Temu Has Not Alleged That Any Purported Domestic
                      Harm Proximately Caused Temu's Alleged Injuries ....................23

           3.   Principles Of Comity Also Confirm That Temu's Allegations Are
                Outside The Ambit Of The FTAIA .........................................................25

      B.   Temu's Antitrust Claims Suffer From Multiple Pleading Deficiencies ...............26

           1.   Temu Fails To Allege Plausible Anticompetitive Conduct ......................27

           2.   Roadget's Supplier Agreements Do Not Require Exclusivity and
                Do Not Substantially Foreclose Competition .........................................27

           3.   The Alleged Supplier Statement, Penalty Notices, And Fines
                Concern Infringing Conduct And Are Not Anticompetitive ...................29

           4.   DMCA Notices And Copyright Lawsuits Are Immune Under
                *Noerr-Pennington* ..............................................................................30

      C.   Temu Fails To Allege A Plausible Relevant Product Market In Which
           Roadget Has Market Power, Which Is Fatal To All Of Its Antitrust Claims ........33

      D.   Temu Fails To Plausibly Plead Facts Demonstrating Antitrust Injury .................37

      E.   Temu's Clayton Act Claim Fails For An Additional Reason As Well .................38

VII.  TEMU'S DERIVATIVE COMMON LAW "UNFAIR COMPETITION" CLAIM
      (COUNT XIV) FAILS WITH THE UNDERLYING CLAIMS .......................................39

VIII. TEMU FAILS TO ALLEGE PLAUSIBLE FACTS TO SUPPORT ITS
      TORTIOUS INTERFERENCE CLAIMS (COUNTS XV-XVII) ....................................41

      A.   Temu's Failure To Plead The Contracts At Issue Dooms Count XV ...................41

      B.     Temu Has Not Alleged Improper Means ................................................. 42

IX.    TEMU'S ABUSE OF PROCESS CLAIM FAILS TO STATE A CLAIM
       (COUNT XVIII) .......................................................................................... 43

CONCLUSION ......................................................................................................... 45

# TABLE OF AUTHORITIES

**Page**

## Cases

*3M Co. v. Boulter*,
   842 F. Supp. 2d 85 (D.D.C. 2012) ..........................................................................41

*\*Adams, Nash & Haskell, Inc. v. United States*,
   No. 20-1916 (RC), 2021 WL 1340918 (D.D.C. Apr. 9, 2021).........................14, 15

*Advanced Computer Servs. Of Michigan, Inc. v. MAI Sys. Corp.*,
   845 F. Supp. 356 (E.D. Va. 1994) ...........................................................................30

*Aldini AG v. Silvaco, Inc.*,
   No. 21-cv-06423-JST, 2022 WL 20016826 (N.D. Cal. Aug. 3, 2022)....................16

*Aliotti v. R. Dakin & Co.*,
   831 F.2d 898 (9th Cir. 1987) .....................................................................................9

*Anderson v. USAA Cas. Ins. Co.*,
   221 F.R.D. 250 (D.D.C. 2004)....................................................................................6

*App Dynamic ehf v. Vignisson*,
   87 F. Supp. 3d 322 (D.D.C. 2015) ...........................................................................10

*Aristotle Int'l Inc. v. Acuant, Inc.*,
   No. 22-cv-741 (DLF), 2023 WL 1469038 (D.D.C. Feb. 2, 2023)...........................17

*Asa Accugrade, Inc. v. Am. Numismatic Ass'n*,
   370 F. Supp. 2d 213 (D.D.C. 2005) ..........................................................................37

*In re Ashby Enterprises, Ltd.*,
   47 B.R. 394 (D.D.C. 1985) .......................................................................................42

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................18

*Assn. of Am. Med. Colleges v. Princeton Rev., Inc.*,
   332 F. Supp. 2d 11 (D.D.C. 2004) ...........................................................................11

*Atari, Inc. v. Amusement World, Inc.*,
   547 F. Supp. 222 (D. Md. 1981)..................................................................................9

*Autronic Plastics, Inc. v. Apogee Lighting, Inc.*,
   No. 19-CV-6268, 2021 WL 8322144 (E.D.N.Y. Mar. 24, 2021)............................43

iv

*Bepex Int'l, LLC v. Micron BV,*
  No. 19-cv-2997, 2023 WL 2975699 (D. Minn. Apr. 17, 2023)..............................16

*Bowhead Info. Tech. Serv. LLC v. Catapult Tech. Ltd.,*
  377 F. Supp. 2d 166 (D.D.C. 2005) .................................................................41

*Brooke Grp. Ltd. V. Brown & Williamson Tobacco Corp.,*
  509 U.S. 209 (1993)..........................................................................................37

*Brownstein v. Lindsay,*
  742 F.3d 55 (3d Cir. 2014)................................................................................11

*Bubble Genius LLC v. Smith,*
  239 F. Supp. 3d 586 (E.D.N.Y. 2017) ..................................................12, 13, 14

*Bus. Equip. Ctr., Ltd. v. DeJur-Amsco Corp.,*
  465 F. Supp. 775 (D.D.C.1978)........................................................................40

*Cartier, Inc. v. Sardell Jewelry, Inc.,*
  294 Fed. App'x 615 (2d Cir. 2008)...................................................................12

*Casco Marina Dev., L.L.C. v. D.C. Redevelopment Land Agency,*
  834 A.2d 77. (D.C. App. 2003)........................................................................41

*Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Global, Inc.,*
  602 F. Supp. 3d 663 (S.D.N.Y. 2022)..............................................................17

*Complex Media, Inc. v. X17, Inc.,*
  No. CV-1807588, 2019 WL 2896117 (C.D. Cal. Mar. 4, 2019) .......................42

*Concord Assocs., L.P. v. Ent. Properties Tr.,*
  817 F.3d 46 (2d Cir. 2016)................................................................................33

*Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz,*
  82 F. Supp. 3d 344 (D.D.C. 2015) ...................................................................19

*Covad Commc'ns Co. v. Bell Atl. Corp.,*
  398 F.3d 666 (D.C. Cir. 2005)....................................................................31, 32

*Data East USA, Inc. v. Epyx, Inc.,*
  862 F.2d 204 (9th Cir. 1988) ..............................................................................9

*Data Gen. Corp. v. Grumman Sys. Support Corp.,*
  36 F.3d 1147 (1st Cir. 1994), *abrogated on other grounds by Reed Elsevier,*
  *Inc. v. Muchnick,* 559 U.S. 154 (2010) ...........................................................38

*Digit. Mktg. Advisors v. McCandless Grp., LLC,*
  No. 2:21-cv-06888-AB-GJS, 2022 WL 18216003 (C.D. Cal. Mar. 28, 2022).................5, 6, 7

*E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961)................................................................................30

*\*E. Sav. Bank, FSB v. Papageorge*,
  31 F. Supp. 3d 1 (D.D.C. 2014), *aff'd,* 629 Fed. Appx. 1 (D.C. Cir. 2015) ...................43, 45

*\*Econ. Rsch. Servs., Inc. v. Resol. Econ., LLC*,
  208 F. Supp. 3d 219 (D.D.C. 2016) ............................................................17, 18, 19

*Elsevier Inc. v. Doctor Evidence, LLC*,
  No. 17-cv-5540(KBF), 2018 WL 557906 (S.D.N.Y. Jan. 23, 2018).....................................19

*\*Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.*,
  417 F.3d 1267 (D.C. Cir. 2005) ...............................................................21, 22, 23

*Enttech Media Grp. LLC v. Okularity, Inc.*,
  No. 220-CV-06298, 2020 WL 6888722 (C.D. Cal. Oct. 2, 2020)........................................31

*Environmental Defense Fund, Inc. v. Massey*,
  986 F.2d 528 (D.C. Cir. 1993) .................................................................40

*\*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
  542 U.S. 155 (2004)..........................................................................21, 25

*Fastov v. Christie's Int'l PLC*,
  2006 WL 8460194, No. 1-97-CV-0578 (D.D.C. Mar. 1, 2006) ...........................................40

*\*Fed. Trade Comm'n v. Facebook, Inc.*,
  560 F. Supp. 3d 1 (D.D.C. 2021)..............................................................35, 36

*\*Fernandez v. Jones*,
  653 F. Supp. 2d. 22 (D.D.C. 2009)...........................................................12, 13

*Gaujacq v. Electricite de France Intern. N.A., Inc.*,
  572 F. Supp. 2d 79 (D.D.C. 2008), *aff'd in part and remanded sub nom.*
  *Gaujacq v. EDF, Inc.*, 601 F.3d 565 (D.C. Cir. 2010)...............................................41

*\*Genetic Sys. Corp. v. Abbott Lab'ys*,
  691 F. Supp. 407 (D.D.C. 1988) .............................................................38, 39

*\*Globalaw Ltd. v. Carmon & Carmon Law Office*,
  452 F. Supp. 2d 1 (D.D.C. 2006) ............................................................11, 14

*Golan v. Holder*,
  565 U.S. 302 (2012)...........................................................................8

*Govt. Rel. Inc. v. Howe*,
  No. 05-1081, 2007 WL 201264 (D.D.C. Jan. 24, 2007)....................................................41

*Grand Lodge of Fraternal Ord. of Police v. Ashcroft*,
   185 F. Supp. 2d 9 (D.D.C. 2001) ........................................................21

*Gross v. Wright*,
   185 F. Supp. 3d 39 (D.D.C. 2016) ......................................................37

*Handgards, Inc. v. Ethicon, Inc.*,
   601 F.2d 986 (9th Cir. 1979) ..............................................................38

*In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*,
   No. 19-md-02918-MMC, 2023 WL 3483242 (N.D. Cal. May 15, 2023) ...............26

*Honey Bum, LLC, v. Fashion Nova, Inc.*,
   63 F.4th 813 (9th Cir. 2023) ...............................................................34

*Honey Bum, LLC v. Fashion Nova, Inc.*,
   No. 2:20-CV-11233-RGK-AS, 2021 WL 4205618 (C.D. Cal. Mar. 26, 2021) .........34

*Houlahan v. World Wide Ass'n of Specialty Programs & Schs.*,
   677 F.Supp.2d 195 (D.D.C. 2010) ..........................................43, 44

*Howard v. Goodman*,
   No. 20-cv-2187 (DLF), 2022 WL 4464978 (D.D.C. Sept. 26, 2022) .............18, 19

*ID7D Co. v. Sears Holding Corp.*,
   No. 3:11cv1054(VLB), 2012 WL 1247329 (D. Conn. Apr. 13, 2012) .................14

*In Truck-Lite Co., LLC v. Grote Indus., Inc.*,
   No. 18-CV-599-JLS-MJR, 2021 WL 8322467 (W.D.N.Y. Sept. 17, 2021) ..........39

*Indeck Energy Servs., Inc. v. Consumers Energy Co.*,
   250 F.3d 972 (6th Cir. 2000) ...............................................................29

*In re Intel Corp. Microprocessor Antitrust Litig.*,
   476 F. Supp. 2d 452 (D. Del. 2007) .....................................................26

*Intellective, Inc. v. Mass. Mut. Life Ins. Co.*,
   190 F. Supp. 2d 600 (S.D.N.Y. 2002) ..................................................32

*Jankovic v. Int'l Crisis Grp.*,
   494 F.3d 1080 (D.C. Cir. 2007) .............................................................3

*Jericho Baptist Church Ministries, Inc. (D.C.) v. Jericho Baptist Church
   Ministries, Inc. (Maryland)*,
   No. 16-CV-00647 (APM), 2020 WL 1703937 (D.D.C. Apr. 8, 2020) ...................40

*Johnson v. Comm'n on PresidentIal Debates*,
   869 F.3d 976 (D.C. Cir. 2017) ............................................................37

*Johnson v. New Destiny Christian Ctr. Church, Inc.*,
  No. 6:17-cv-710-Orl-37DCI, 2019 WL 1014245 (M.D. Fla. Mar. 4, 2019),
  *aff'd*, 826 F. App'x 766 (11th Cir. 2020)..........................................................................6

*Ju v. Carter*,
  No. CV 14-391 (CKK), 2015 WL 5168251 (D.D.C. Aug. 31, 2015) ...................................28

*K&D, LLC v. Trump Old Post Off., LLC*,
  No. CV 17-731 (RJL), 2018 WL 6173449 (D.D.C. Nov. 26, 2018), *aff'd*, 951
  F.3d 503 (D.C. Cir. 2020)..................................................................................................39

*Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*,
  748 F.3d 160 (4th Cir. 2014) .............................................................................................35

*Kopff v. World Research Group, LLC*,
  519 F. Supp. 2d 97 (D.D.C. 2007)......................................................................................44

*Kruman v. Christie's Int'l PLC*,
  284 F.3d 384 (2d Cir. 2002), *abrogated on other grounds by F. Hoffmann-La
  Roche*, 542 U.S. 155 ..........................................................................................................22

*Larsen v. U.S. Navy*,
  486 F. Supp. 2d 11 (D.D.C. 2007) ......................................................................................20

*Leisurecraft Products, Ltd. v. Int'l Dictating Equipment, Inc.*,
  No. 81-541, 1981 WL 40516 (D.D.C. 1981) ............................................................11, 12, 15

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
  753 F.3d 395 (2d Cir. 2014)................................................................................23, 24, 25

*Marion Healthcare, LLC v. S. Illinois Healthcare*,
  No. 12-CV-871-SMY-PMF, 2015 WL 3466585 (S.D. Ill. May 29, 2015) ............................39

*McGuire v. Columbia Broad. Sys., Inc.*,
  399 F.2d 902 (9th Cir. 1968) ..............................................................................................39

*Medimpact Healthcare Sys., Inc. v. IQVIA, Inc.*,
  No. 19cv1865-GPC(DEB), 2022 WL 6281793 (S.D. Cal. Oct. 7, 2022)..............................16

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
  888 F. Supp. 2d 691 (D. Md. 2012), *modified on clarification*, 904 F. Supp. 2d
  530 (D. Md. 2012) ..............................................................................................................30

*Meyer Grp., Ltd. v. Rayborn*,
  No. CV-19-1945 (ABJ), 2020 WL 5763631 (D.D.C. Sept. 28, 2020) ..................................17

*Minn-Chem, Inc. v. Agrium, Inc.*,
  683 F.3d 8459 (7th Cir. 2012) .............................................................................................23

*Mizlou Television Network, Inc. v. Nat'l Broad. Co.*,
603 F. Supp. 677 (D.D.C. 1984) ........................................................27

*Modis, Inc. v. InfoTran Sys., Inc.*,
893 F. Supp. 2d 237 (D.D.C. 2012) ....................................................42

*Mosdos Chofetz Chaim, Inc. v. Vill. Of Wesley Hills*,
701 F. Supp. 2d 568 (S.D.N.Y. 2010) .................................................32

*Motorola Mobility LLC v. AU Optronics Corp.*,
775 F.3d 816 (7th Cir. 2015) (Posner, J.) .....................................22, 25

*Motorola Sols., Inc. v. Hytera Comm. Corp. Ltd.*,
436 F. Supp. 3d 1150 .........................................................................16

*Murray v. Wells Fargo Home Mortg.*,
953 A.2d 308 (D.C. 2008) ..................................................................42

*Nader v. The Democratic Nat. Comm.*,
555 F. Supp. 2d 137 (D.D.C. 2008), *aff'd on other grounds sub nom. Nader v. Democratic Nat. Comm.*, 567 F.3d 692 (D.C. Cir. 2009) .................................31, 45

*Newborn v. Yahoo!, Inc.*,
391 F. Supp. 2d 181 (D.D.C. 2005) ....................................................10

*NYNEX Corp. v. Discon, Inc.*,
525 U.S. 128 (1998) ...........................................................................37

*Ouellette v. Viacom Intern., Inc.*,
No. CV 10-133-M-DWM-JCL, 2012 WL 1435703 (D. Mont. Apr. 25, 2012),
*aff'd*, 671 Fed. App'x 972 (9th Cir. 2016) ...............................................6

*Pastime LLC v. Schreiber*,
No. 16-CV-8706 (JPO), 2017 WL 6033434 (S.D.N.Y. Dec. 5, 2017) ....................11

*Pellerin v. Honeywell, Int'l, Inc.*,
877 F. Supp. 2d 983 (S. Cal. 2012) ....................................................18

*Perfvwaybelayouix v. Graham-Drake*,
No. 22-1019 (CKK), 2022 WL 17357231 (D.D.C. Dec. 1, 2022) ...................8, 10

*Plus EV Holdings, Inc. v. Thras.io, Inc.*,
No. 20-00197-CV-W-BP, 2020 WL 8454919 (W.D. Mo. July 17, 2020) .............43

*Prevent DEV GmbH v. Adient PLC*,
No. 20-CV-13137, 2021 WL 5585917 (E.D. Mich. Nov. 30, 2021) ..............24, 26

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*,
    508 U.S. 49 (1993) ................................................................................................. 31

*ProV Int'l, Inc. v. Lucca*,
    No. 8:19-cv-978-T-23AAS, 2019 WL 5578880 (M.D. Fla. Oct. 29, 2019) ........................... 18

*Prunty v. Vivendi*,
    130 F. Supp. 3d 385 (D.D.C. 2015) ....................................................................... 10

*R and A Synergy LLC v. Spanx, Inc.*,
    No. 2:17-cv-09147-SVW-AS, 2019 WL 4390564 (C.D. Cal. May 1, 2019) ........................ 13

*Rockwell Capital Partners, Inc. v. CD Intl. Enterprises, Inc.*,
    311 F. Supp. 3d 52 (D.D.C. 2018) ......................................................................... 44

*Rossi v. Motion Picture Ass'n of Am. Inc.*,
    391 F.3d 1000 (9th Cir. 2004) ................................................................................. 5

*Scott-Blanton v. Universal City Studios Productions LLP*,
    539 F. Supp. 2d 191 (D.D.C. 2008) ..................................................................... 7, 8

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ................................................................................. 31

*Source Cap. Funding Inc. v. Barrett Fin. Grp., LLC*,
    No. CV-23-02133-PHX-DWL, 2023 WL 7552330 (D. Ariz. Nov. 14, 2023) ................. 5, 7

*Stenograph L.L.C. v. Bossard Assoc., Inc.*,
    144 F.3d 96 (D.C. Cir. 1998) ................................................................................... 8

*Sterling Merch., Inc. v. Nestle, S.A.*,
    656 F.3d 112 (1st Cir. 2011) ................................................................................. 29

*Sugar Busters, L.L.C. v. Brennan*,
    No. 98-CV-1562, 1999 WL 109564 (E.D. La. Feb. 19, 1999) ................................... 32

*Tine Bak LLC v. Selkatz, Inc.*,
    No. CV 20-5065, 2020 WL 9074806 (C.D. Cal. Nov. 30, 2020) ................................ 43

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
    532 U.S. 23 (2001) ................................................................................................. 12

*U.S. Dominion, Inc. v. Powell*,
    No. 1-21-CV-00040, 2022 WL 4534942 (D.D.C. Sept. 28, 2022) ............................. 44

*United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v.
Novartis Pharms. Corp.*,
    902 F.3d 1 (1st Cir. 2018) ..................................................................................... 31

*United Mine Workers of Am. v. Pennington*,
   381 U.S. 657 (1965).................................................................................30

*United States v. Microsoft Corp.*,
   253 F.3d 34 (D.C. Cir. 2001)............................................26, 27, 33, 34

*US Dominion, Inc. v. MyPillow, Inc.*,
   No. 1-21-cv-0445, 2022 WL 1597420 (D.D.C. May 19, 2022) ................44

*Vaad L'Hafotzas Sichos, Inc. v. Krinsky*,
   133 F.Supp.3d 527 (E.D.N.Y. 2015) ....................................................11

*Vendavo, Inc. v. Price f(x) AG*,
   No. 17-CV-06930-RS, 2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) .................18

*Venetian Casino Resort, LLC v. NLRB*,
   484 F.3d 601 (D.C. Cir. 2007).............................................................31

*\*WAKA LLC v. DC Kickball*,
   517 F. Supp. 2d 245 (D.D.C. 2007)................................................26, 27

*Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*,
   529 U.S. 205 (2000).............................................................................12

*Walgreen Co. v. AstraZeneca Pharms. L.P.*,
   534 F. Supp. 2d 146 (D.D.C. 2008)......................................................38

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
   382 U.S. 172 (1965).............................................................................33

*Westberg v. F.D.I.C.*,
   926 F. Supp. 2d 61 (D.D.C. 2013), *aff'd*, 741 F.3d 1301 (D.C. Cir. 2014) .........20

*White v. UMG Recordings, Inc.*,
   No. 20-cv-9971, 2021 WL 6052106 (S.D.N.Y. Dec. 21, 2021).....................5

*Whitt v. Am. Prop. Constr., P.C.*,
   157 A.3d 196 (D.C. 2017) ...................................................................41

*Woodland Drive LLC v. Courtovich*,
   No. 1:19-cv-00750, 2021 WL 4476767 (D.D.C. Sept. 30, 2021)..................6

*Yellowitz v. J. H. Marshall & Associates, Inc.*,
   284 A.2d 665 (D.C. App. 1971)............................................................44

*Yurman Design, Inc. v. PAJ, Inc.*,
   262 F.3d 101 (2d Cir. 2001).................................................................12

*Zaccari v. Apprio, Inc.*,
   390 F. Supp. 3d 103 (D.D.C. 2019) ...............................................................20

## **Statutes**

15 U.S.C. § 6a ................................................................................................21

15 U.S.C. § 1125(a) ........................................................................................11

17 U.S.C. § 102(b) ............................................................................................8

17 U.S.C. § 411 ....................................................................................1, 10, 11

17 U.S.C. § 411(b)(1) ......................................................................................10

17 U.S.C. § 512(c)(3) ........................................................................................6

17 U.S.C. § 512(c)(3)(a) ....................................................................................6

17 U.S.C. § 512(g)(2)(C) ................................................................................32

17 U.S.C. § 512(f) ..........................................................................1, 5, 6, 7, 42

18 U.S.C. § 1831 .............................................................................................15

18 U.S.C. § 1837 .............................................................................................15

18 U.S.C. § 1837(1) ........................................................................................16

18 U.S.C. § 1837(2) ........................................................................................16

18 U.S.C. § 1839(3) ........................................................................................17

D.C. Code § 36-401(4) ....................................................................................18

D.C. Code § 36-401 ........................................................................................15

## **Other Authorities**

Fed. R. Civ. P. 9(b) ..........................................................................................6

Fed. R. Civ. P. 12(b)(1) ..................................................................................20

Fed. R. Civ. P. 12(b)(6) ..................................................................................37

## PRELIMINARY STATEMENT

Contrary to the fanciful narrative spun in Plaintiff WhaleCo Inc.'s (hereafter, "Temu") Complaint, it is Temu that is unwilling to compete fairly in the marketplace by encouraging the rampant sale of infringing products on its website and then filing this retaliatory lawsuit against Defendant Roadget Business Pte. Ltd. ("Roadget") for its legitimate efforts to protect its intellectual property.  Temu's concocted story of intimidation and retaliation towards anonymous Chinese merchants is a smoke-screen intended to hide its infringing conduct, as well as the legal and factual deficiencies of its claims.  Other submissions by Temu in this case confirm these allegations are unfounded, but even accepting them as true for this motion only, they fail to support plausible claims.  Indeed, most of the claims asserted by Temu have no place in this Court—the majority of alleged "bad acts" by Roadget supposedly took place in China, governed by Chinese, not U.S., law.  The few allegations regarding U.S. conduct are based on Roadget's protection of its intellectual property, which is immune from liability under the *Noerr-Pennington* doctrine. Each of Temu's 18 claims should be dismissed because none have been adequately pleaded.

Temu asserts a claim under 17 U.S.C. § 512(f) alleging that Roadget has been sending false takedown notices to remove infringing content posted on Temu's website.  (Count I).  But this claim requires Temu to allege facts showing that Roadget had actual, subjective knowledge that the DMCA notices were false, which Temu fails to do.  Relatedly, Temu asserts a purported claim for "Inaccurate Copyright Registrations under 17 U.S.C. § 411 (Count III), but Section 411 does not provide a cause of action; it is an affirmative defense, which is inapplicable here.

Temu asserts copyright and trade dress infringement claims related to "arcade-style games" on its website.  Counts II and IV.  But Temu does not hold a copyright over the *idea* of arcade-style games on a shopping website and its own allegations demonstrate there has been no copying of any protectable elements of Temu's copyrights, which are limited to "audiovisual material."

1

Further, there are no plausible facts suggesting that the "look and feel" of Temu's arcade-style games are non-functional, have acquired secondary meaning or resulted in consumer confusion.

Temu's trade secret claims (Counts V and VI) fare no better.  U.S. trade secret laws are inapplicable to the alleged conduct on which Temu's claims rely.  That bar aside, Temu fails to allege any plausible facts establishing: (1) protectable trade secrets, (2) reasonable measures to protect the secrecy of the purported trade secrets which it admittedly shares with thousands of Chinese merchants, (3) any economic value from maintaining the secrecy of these undefined trade secrets, or (4) that Roadget actually acquired or used the alleged information.

Similarly, Temu's antitrust claims (Counts VII-XIII) are also beyond the reach of the antitrust laws.  The Foreign Trade Antitrust Improvements Act ("FTAIA") precludes application of U.S. antitrust laws to foreign conduct unless the conduct involves import commerce or the conduct giving rise to the claim has "a direct, substantial, and reasonably foreseeable effect" on U.S. commerce.  Temu's Complaint does not meet this showing.  Further, Temu fails to allege plausible facts demonstrating anticompetitive conduct, market power within a relevant market, or antitrust injury, each of which is necessary to sustain its claims.  Temu's unfair competition claim, (Count XIV), which is premised on its antitrust and trade dress claims, fails for the same reasons.

Temu's tortious interference claims (Counts XV-XVII) fail because Temu has not alleged any specific contracts at issue or any improper means constituting interference since the conduct Temu relies on is privileged or protected by *Noerr-Pennington*.  Similarly, Temu's abuse of process claim fails because Temu relies entirely on the filing of lawsuits, which do not constitute abuse of process as a matter of law, and in any event, are immune from liability under *Noerr-Pennington*.

For the reasons explained herein, the Court should dismiss Temu's Complaint in its entirety.

# BACKGROUND[1]

A.     **The Parties**

Roadget is a private company organized under the laws of Singapore that owns and operates the website https://us.Shein.com (the "Shein website") and the corresponding mobile application (the "Shein mobile app") (collectively, the "Shein Platform").[2]  Compl. ¶¶ 26, 121. Through the online Shein Platform, a wide variety of products such as men's, women's, and children's apparel are sold throughout the world.  *Id.* ¶¶ 139, 141.  The Shein Platform offers Shein-branded products and also offers a marketplace model where third-parties can sell their products on the Shein website.  *Id.* ¶¶ 1, 13, 109.  The Shein Platform offers goods at lower prices than most of its competitors because Roadget has proprietary algorithms that permit it to quickly identify consumer trends, and a supply chain permitting Roadget to nimbly scale production in response to those trends.  *Id.* ¶¶ 112, 140.  Temu has alleged that there are tens of thousands of manufacturers in China involved in meeting the needs of market participants like Roadget, D. Mass Compl. ¶ 1, and Temu alleges that Roadget has contracts with approximately 8,000 of them, Compl. ¶ 141.

Temu is the U.S. subsidiary of a large Chinese based e-commerce provider called Pinduoduo or PDD Holdings—a company that the U.S. Government has recognized as one of the

---

[1]  These background facts, which are taken as true for purposes of this motion only, are taken from the Complaint or the related antitrust Complaint Temu previously filed and dismissed in the District of Massachusetts, Complaint, *Whaleco Inc. v. Roadget Business Pte. Ltd, et al*., 1:23-cv-11596 (D. Mass. Jul. 14, 2023), ECF No. 1 (the "D. Mass. Compl."), or other sources of judicial notice.  The Court can properly take judicial notice of Temu's allegations in its prior Complaint for purposes of this motion. *See, e.g.*, *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1088 (D.C. Cir. 2007) (taking judicial notice of statements the plaintiff made in a court proceeding in another court, because "such materials may properly be considered on a motion to dismiss").

[2]  The Complaint refers to Shein as the defendant, which presumably references Roadget.

3

top websites for piracy and counterfeiting.[3]  Temu began doing business in the U.S. in September

2022.  *Id.* ¶¶ 1, 24.  Temu alleges it is a platform operator offering consumer goods made by

manufacturers located in China and sold worldwide through Temu's website and mobile

application.  *Id.* ¶¶ 1, 180, 187.  Temu has contracts with thousands of the same Chinese

manufacturers as Roadget.  D. Mass Compl. ¶ 172.  Temu admits it offers "identical" or "highly

similar" products as Roadget, over which Roadget claims trademarks or copyrights.  Compl. ¶¶

84, 89, 154, 216.  In September 2022, Roadget began sending Temu DMCA takedown notices to

remove infringing materials from Temu's website ("DMCA Notices").  *Id.* ¶ 59.

B.      **Litigation History**

In December 2022, Roadget sued Temu in the Northern District of Illinois, alleging

trademark counterfeiting, trademark and copyright infringement and other claims.  *Id.* ¶ 99;

*Roadget Business Pte. Ltd. v. Whaleco, Inc.*, No. 1:22-CV-07119 (N.D. Ill. Dec. 16, 2022), ECF

No. 1 (the "Illinois Action").  On July 31, 2023, the court issued a TRO, enjoining Temu from,

among other things "reproducing, publishing, distributing, importing, or publicly displaying"

Roadget's copyrights, and from "using and/or publicly displaying" Roadget's trademarks.  RJN

Ex. 3 (Temporary Restraining Order, *Roadget Business Pte. Ltd. V. Whaleco, Inc.*, No. 1:22-CV-

07119 (N.D. Ill. July 31, 2023), ECF No. 110.

In July 2023, Temu sued Roadget, Shein US Services, LLC, and Shein Distribution

Corporation in the District of Massachusetts, where Temu is headquartered (Compl. ¶ 131),

alleging many of the same antitrust violations as it does here.  *See* RJN Ex. 4 (the "D. Mass.

---

[3]  The exhibits to Defendants' Request for Judicial Notice, filed concurrently, are referenced as
"RJN Ex. __."  Temu is owned by PDD Holdings ("PDD").  RJN Ex. 1 at 6; *see also* RJN Ex. 2
at 31 (including PDD as a notorious market for counterfeiting and piracy).

Complaint").  Ultimately, Roadget and Temu agreed to dismiss their respective lawsuits without prejudice. Compl. ¶ 131.  On December 13, 2023, Temu filed this renewed action.

## ARGUMENT

I.   **TEMU'S COUNT I FAILS TO STATE A CLAIM FOR FALSE DMCA TAKEDOWN NOTICES UNDER 17 U.S.C. § 512(F)**

Many of Temu's causes of action rely on its allegations of false DMCA takedown notices, *see e.g.*, Counts I, VII, VIII, IX, X, XV, XVI, XVII, however, this house of cards topples under its own weight because Temu cannot allege facts to support its underlying § 512(f) claim.  To state a violation of § 512(f), Temu must plausibly allege that "(1) [Roadget] knowingly and materially misrepresented that copyright infringement occurred; (2) [Temu] relied on that misrepresentation; and (3) [Temu] was injured as a result." *Digit. Mktg. Advisors v. McCandless Grp., LLC*, No. 2:21-cv-06888-AB-GJS, 2022 WL 18216003, at *2 (C.D. Cal. Mar. 28, 2022); *Source Cap. Funding Inc. v. Barrett Fin. Grp., LLC*, No. CV-23-02133-PHX-DWL, 2023 WL 7552330 (D. Ariz. Nov. 14, 2023).[4]  There is no liability "simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake." *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1005 (9th Cir. 2004); *see also White v. UMG Recordings, Inc.*, No. 20-cv-9971, 2021 WL 6052106, at *2 (S.D.N.Y. Dec. 21, 2021) (cleaned up) (collecting cases) ("[N]egligence is not the standard for liability under § 512(f).").

Because a claim under § 512(f) "sounds in fraud", it is subject to the heightened pleading standards of Fed. R. Civ. P. 9(b). *Woodland Drive LLC v. Courtovich*, No. 1:19-cv-00750, 2021 WL 4476767, at *2 (D.D.C. Sept. 30, 2021) ("When a claim sounds in fraud, the plaintiff must satisfy the 'heightened' pleading standard under Civil Rule 9(b)"); *Digit. Mktg. Advisors*, 2022

---

[4]  Based on its review, Roadget is not aware of any cases from this Circuit that interpret § 512(f).  As such, Roadget relies upon cases from other Circuits interpreting this statute.

WL 18216003, at *4 (applying Rule 9(b) to § 512(f) claim).  "[A] pleading subject to Rule 9(b) scrutiny may not rest on information and belief" and must be pled "with particularity."  *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 253 (D.D.C. 2004).  Courts have described § 512(f) as setting a "high bar" for plaintiffs.  *Digit. Mktg. Advisors*, 2022 WL 18216003, at *3; *Ouellette v. Viacom Intern., Inc.*, No. CV 10-133-M-DWM-JCL, 2012 WL 1435703, at *3 (D. Mont. Apr. 25, 2012), *aff'd*, 671 Fed. App'x 972 (9th Cir. 2016).

Temu fails to allege plausible facts with particularity that Roadget *knowingly* misrepresented any of the DMCA Notices.  Temu alleges that Roadget did not attach copyright registrations or proof of ownership when sending the DMCA Notices.  Compl. ¶ 44.  But the DMCA does not require either.  *See* 17 U.S.C. § 512(c)(3)(a).  In fact, "the DMCA does not limit the ability to submit § 512 Takedown Notifications to registered copyright owners alone."  *Johnson v. New Destiny Christian Ctr. Church, Inc.*, No. 6:17-cv-710-Orl-37DCI, 2019 WL 1014245, *4 n.3 (M.D. Fla. Mar. 4, 2019), *aff'd*, 826 F. App'x 766 (11th Cir. 2020); 17 U.S.C. § 512(c)(3).

Temu alleges that Roadget made errors in some of its copyright registrations.  Compl. ¶¶ 59–61.  But mistakes are insufficient to show fraud and Temu alleges that Roadget was unaware of the errors.  *See id.* ¶ 60 ("[Roadget] is not aware of the basic facts underlying the works it seeks to register.").  Temu's allegations that some of Roadget's DMCA Notices contain incorrect or unclickable links and mismatched images, *id.* ¶ 52, have no bearing on whether Roadget knowingly misrepresented the ownership of the copyrighted images.  Temu fails to allege facts that would plausibly suggest these "errors" are anything other than the byproducts of compiling a large volume of takedown notices in response to the massive amounts of infringing products on Temu's website.  Temu admits these errors constitute only a small fraction of the total DMCA Notices sent.  *See id.* ¶¶ 92, 95 (alleging errors with 560 links out of 19,850 product listings).

Temu contends that the IP transfer provisions in Roadget's supplier agreements are invalid and the suppliers have no rights to transfer, *id.* ¶ 51, but Temu's unsupported legal opinion does not make it so, and there are no facts suggesting that Roadget subjectively believed as much. *See, e.g.*, *Source Cap. Funding Inc.*, 2023 WL 7552330, at *4 ("it is not enough under § 512(f) to show that the accusations were unfounded or even objectively unreasonable"). Finally, Temu's allegation that Roadget is in a separate dispute with a Temu seller over a DMCA notice, Compl. ¶ 78, sheds no light on Roadget's subjective knowledge regarding the notices sent to Temu.

None of these allegations, taken separately or together, establish that Roadget "subjectively, actually knew" that it made false statements in the DMCA Notices; rather, these allegations "add up to nothing more than the allegation that [Roadget] mistakenly asserted rights in the works," which is insufficient under § 512(f). *Digit. Mktg. Advisors*, 2022 WL 18216003, at *4. Temu's allegations do not satisfy the "high bar" of a § 512(f) claim and it must be dismissed.

## II.   **TEMU'S COUNT II FOR COPYRIGHT INFRINGEMENT DOES NOT ALLEGE COPYING OF ANY PROTECTIBLE ELEMENTS OF TEMU'S COPYRIGHTS**

Temu alleges Roadget is infringing its purported copyrights over promotional games Lucky Flip, Credit Giveaway, Free Gift, and Cash Reward (collectively, the "Games") (Count II). Compl. ¶¶ 175–85, 232–38. Temu must allege "(1) ownership of a valid copyright, and (2) that [Roadget] copied original or protectible elements of the copyrighted work." *Scott-Blanton v. Universal City Studios Productions LLP*, 539 F. Supp. 2d 191, 197 (D.D.C. 2008) (internal quotations omitted).

Temu's Complaint reads as though Temu holds a copyright to the *idea* of arcade-style games on a retail website. Not so. It is fundamental that copyrights cannot protect ideas, but only the expression of those ideas in a tangible format. 17 U.S.C. § 102(b) ("In no case does copyright protec[t] . . . any *idea*, . . . illustrated, or embodied in [the copyrighted] work.") (emphasis added); *Golan v. Holder*, 565 U.S. 302, 328 (2012). The arcade-style elements of the

Games are not subject to copyright protection because their features and elements are inseparable from the ideas of the Games themselves. Although Temu claims that its copyright registrations "cover the artistic designs" of the Games, Compl. ¶¶ 175–76, the actual registrations are limited only to the specific "audiovisual material" that was submitted.[5]

"In determining whether the works are substantially similar, the court must first identify which parts of the artist's work, if any, are protectible[,] and second, whether an ordinary observer could conclude that 'the defendant[s] unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value.'" *Graham-Drake*, 2022 WL 17357231, at *7 (quoting *Scott-Blanton*, 539 F. Supp. 2d 197)). Individual components of a protectable work are not protectable simply by virtue of the fact that they are part of a protected work where they do not possess the requisite modicum of creativity or originality. *See Stenograph L.L.C. v. Bossard Assoc., Inc.*, 144 F.3d 96, 99 (D.C. Cir. 1998) ("unoriginal portions of a software program can be copied without resulting in copyright infringement"). Although the D.C. Circuit has not addressed this precise issue in the context of video games, other courts have consistently held that "[n]o substantial similarity of expression will be found when 'the idea and its expression are . . . inseparable,' given that 'protecting the expression in such circumstances would confer a monopoly of the *idea* upon the copyright owner.'" *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 208–10 (9th Cir. 1988) (quoting *Aliotti v. R. Dakin & Co.*, 831 F.2d 898 (9th Cir. 1987)).

The Ninth Circuit's decision in *Data East* is instructive. There, the court held that numerous similarities between two computer karate games did not warrant a finding of "substantial

---

[5] *See* RJN Ex. 5 (Temu's correspondence with the U.S. Copyright Office regarding the alleged copyrights) and Ex. 6 (the registrations of the alleged copyrights). Because Temu relies on its copyright registrations, it is appropriate for the Court to consider such materials on Roadget's Motion to Dismiss. *See, e.g.*, *Perfwaybelayouix v. Graham-Drake*, No. 22-1019 (CKK), 2022 WL 17357231, at *7 (D.D.C. Dec. 1, 2022); RJN at 5–6.

similarity" for copyright infringement because the similarities "necessarily followed" from the idea of a martial arts combat game.  As such, they were not protectable absent identical copying, which was not shown.  *Id.*  The court explained:

> After careful consideration and viewing of these features, we find that they necessarily follow from the *idea* of a martial arts karate combat game, or are inseparable from, indispensable to, or even standard treatment of the *idea* of the karate sport.  As such, they are not protectable.  When idea and expression coincide, there will be protection against nothing other than identical copying.  A comparison of the works in this case demonstrates that identical copying is not an issue.

*Id.* at 209 (emphasis in original) (internal quotations omitted); *Atari, Inc. v. Amusement World, Inc.*, 547 F. Supp. 222, 229 (D. Md. 1981) (finding no copyright infringement because the many similarities between two video games was "inevitable, given the requirements of the idea of [the game] and the technical demands of the medium of a video game"); 3 Nimmer § 13.03(A)(1), at 13–28 ("that the common idea is only capable of expression in more or less stereotyped form will preclude a finding of actionable similarity.").

The same is true here.  The Games represent arcade-style game ideas that include common catch-phrases like "Special Surprise" and "Congrats!" along with depictions of cards, squares, and wheels of fortune that customers can click on to reveal surprise discounts and other gifts.  *See* Compl. ¶¶ 176, 178.  Temu's Games are inseparable from the idea of arcade-style games; as such, there can be no infringement absent "identical" copying.  Temu's side-by-side comparisons of its Games and Roadget's games in the Complaint confirm there is no identical copying, *see id.*, which can be decided on a motion to dismiss. *See* Compl. ¶¶ 176–79; *Graham-Drake*, 2022 WL 17357231, at *6 ("Although the question of substantial similarity often involves fact-finding for a jury, copyright claims such as the one before this Court can, in certain instances, be resolved as a matter of law"); *Prunty v. Vivendi*, 130 F. Supp. 3d 385, 390–91 (D.D.C. 2015) ("concluding as

a matter of law . . . that [two songs] are not substantially similar"). Without "identical copying", Temu's copyright infringement claim fails.[6]

## III.  TEMU'S COUNT III MUST BE DISMISSED BECAUSE THERE IS NO RIGHT OF ACTION FOR ALLEGED INACCURATE COPYRIGHT REGISTRATIONS

For Count III, Temu alleges that Roadget provided inaccurate information to the Copyright Office in 35 of its applications for copyright registration in violation of 17 U.S.C. § 411 and seeks "[a]n Order cancelling [Roadget's] copyright registrations containing false and/or inaccurate information." Compl. ¶ 240; p. 92. Temu attempts to create a cause of action where none exists. Section 411(a) establishes that "preregistration or registration of the copyright" is required before a civil action for copyright infringement can be instituted. Section 411(b)(1) provides that a certificate of registration satisfies the requirements even if it contains any inaccurate information unless "the inaccurate information was included on the application for copyright registration *with knowledge* that it was inaccurate" and "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1).

Nothing under the statute permits a cause of action to challenge allegedly inaccurate registrations or to seek their cancellation. *See* 17 U.S.C. § 411; *App Dynamic ehf v. Vignisson*, 87 F. Supp. 3d 322, 331–32 (D.D.C. 2015) (dismissing plaintiff's claim because, *inter alia*, "[t]he authority to invalidate or cancel Defendant's copyright registration lies with the Copyright Office itself" and directing plaintiff to pursue its dispute through the Copyright Office); *Brownstein v. Lindsay*, 742 F.3d 55, 75 (3d Cir. 2014) (holding that the district court had erred in ordering a cancellation of a copyright registration "because there is no statutory indication whatsoever that

---

[6]  Temu's infringement claim also fails because it does not allege "during what time [Roadget] infringed the copyright." *See Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 186 (D.D.C. 2005). The *sole* conclusory allegation is that "[Roadget] later developed games that are substantially similar if not identical to Temu's copyrighted promotional games." Compl. ¶ 176.

courts have such authority"); *Vaad L'Hafotzas Sichos, Inc. v. Krinsky*, 133 F.Supp.3d 527, 537 (E.D.N.Y. 2015) (rejecting "affirmative relief in the form of cancellation of the registration . . . [because] 'there is no precedent supporting the use of a claim for fraud on the Copyright Office as an affirmative cause of action'"); *Pastime LLC v. Schreiber*, No. 16-CV-8706 (JPO), 2017 WL 6033434, at *4 (S.D.N.Y. Dec. 5, 2017) ("the absence of a cause of action for fraud on the Copyright Office comports with the absence of a cause of action for cancellation of a copyright registration"); *cf. Assn. of Am. Med. Colleges v. Princeton Rev., Inc.*, 332 F. Supp. 2d 11, 18 (D.D.C. 2004) ("misuse of copyright [is] a defense to copyright infringement and not as an affirmative claim").  There is no basis for Temu to assert § 411 as an affirmative cause of action.

## IV. TEMU HAS NOT ALLEGED PLAUSIBLE FACTS SUPPORTING COUNT IV FOR TRADE DRESS INFRINGEMENT

Temu alleges trade dress infringement in violation of 15 U.S.C. § 1125(a) for Roadget's alleged copying of its "arcade-style" trade dress (Count IV).  Compl. ¶¶ 186–205, 244–46.  Temu must demonstrate its trade dress is "(1) valid [], (2) distinctive or has acquired secondary meaning [with Temu], and (3) that there is a substantial likelihood of confusion between [Temu's trade dress] and [Roadget's trade dress]."  *See Globalaw Ltd. v. Carmon & Carmon Law Office*, 452 F. Supp. 2d 1, 26 (D.D.C. 2006) (citation and quotation marks omitted).

### A. Temu Has Not Sufficiently Pled A Valid And Non-Functional Trade Dress

Temu has not articulated a protectable trade dress because it has failed to plausibly allege its arcade games are non-functional.  *Leisurecraft Products, Ltd. v. Int'l Dictating Equipment, Inc.*, No. 81-541, 1981 WL 40516, at *2 (D.D.C. 1981).  "In order to be classified as non-functional, the design of a product must be distinctive and arbitrary enough to separate itself from the function of the product."  *Id.*  There is a "statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection."  *TrafFix Devices, Inc. v. Marketing*

11

*Displays, Inc.*, 532 U.S. 23, 30 (2001).  "[T]rade dress is functional, and thus not protectable, when

it is essential to the use or purpose of the article."  *Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 Fed.

App'x 615, 620 (2d Cir. 2008) (quotation marks omitted).  "[T]rade dress protection for product

design [] entails a greater risk of impinging on ideas as compared with protection of packaging or

labeling."  *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001).

   The Complaint does not allege any facts establishing how its alleged trade dress is non-

functional.  As explained above, the design of the Games is inseparable from the idea of arcade-

style games.  A wheel of fortune game has to look a certain way to function as a wheel of fortune.

The Games also function to engage individuals shopping on the websites—which the Complaint

admits.  *See, e.g.*, Compl. ¶¶ 176, 178, 189; *see also Bubble Genius LLC v. Smith*, 239 F. Supp. 3d

586, 595 (E.D.N.Y. 2017) (finding trade dress features functional when their use is necessary for

competition in the market).  Because the alleged trade dress is functional, it is not protectable.

   B.   **Temu Has Not Sufficiently Pled Secondary Meaning**

   A court need not consider secondary meaning if the party claiming trade dress infringement

cannot prove non-functionality.  *TrafFix*, 532 U.S. at 33–34.  Nevertheless, Temu fails to plausibly

allege that the look and feel of its arcade-style games have acquired secondary meaning, *i.e.* "proof

that the public recognizes only one source of the product or service."[7]  *Fernandez v. Jones*, 653 F.

Supp. 2d. 22, 29 (D.D.C. 2009).  "Proof of secondary meaning entails vigorous evidentiary

requirements."  *Id.* at 30 (quotation marks omitted).  "The plaintiff can meet this evidentiary burden

through the use of direct evidence, such as consumer surveys or testimony from consumers, or

through the use of circumstantial evidence[,]" such as "(1) the length and manner of its use, (2)

---

[7] Unregistered "product designs"—like the design of the arcade-style games at issue—cannot be
inherently distinctive, and are only protectible upon a showing of secondary meaning.  *Wal-Mart
Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 216 (2000).

the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the name or mark and a particular product or venture.'" *Id.* (quotations marks omitted).

Temu's allegations that its "arcade-style games" have acquired secondary meaning are based on conclusory and generalized allegations that "millions of consumers have been exposed to Temu's Arcade Trade Dress and have come to associate it with Temu." Compl. ¶ 200. There are no plausible facts demonstrating that "consumers base their purchasing decisions upon seeing" the look and feel of Temu's arcade-style games. *Fernandez*, 653 F. Supp. 2d. at 29. Temu's conclusory allegations that its success "is largely attributable to its . . . fun, colorful, and creative promotional mobile games[,]" Compl. ¶ 173, are insufficient to demonstrate the degree to which consumers recognize Temu's Games, as opposed to other features of its website.[8] *See Bubble Genius LLC*, 239 F. Supp. 3d at 598 (plaintiff's allegation about its substantial investment in "promoting, advertising and soliciting sales" does not establish secondary meaning when it had only alleged exclusive use of the trade mark for three years and nine months); *R and A Synergy LLC v. Spanx, Inc.*, No. 2:17-cv-09147-SVW-AS, 2019 WL 4390564, at *7-9 (C.D. Cal. May 1, 2019) ("Without more, all Plaintiff has alleged is that Plaintiff has successfully sold its [] products to date, which is insufficient to equate any secondary meaning about any feature of the [plaintiff's] products with the [plaintiff's] brand."); *ID7D Co. v. Sears Holding Corp.*, No. 3:11cv1054(VLB), 2012 WL 1247329, at *8 (D. Conn. Apr. 13, 2012) (dismissing trade dress claim for failure to

---

[8]   Temu's reliance on its overall brand and marketing strategy is misplaced because its trade dress claim is limited to the arcade-style games. *See e.g.*, Compl. ¶ 188 (alleging it "invested heavily in building its brand and customer base, expending hundreds of millions of dollars in the past year on advertising and promotion" and "Temu has become a household name in American retail."); *id.* ¶ 192 (alleging success of its 2023 Super Bowl advertisement*); id.* ¶ 193 (alleging "customer recognition for the distinctive 'look and feel' of Temu's website and mobile app").

plead plausible facts regarding consumer surveys or the length and exclusivity of its use of the trade dress).[9]

### C.     Temu Has Not Sufficiently Pled A Likelihood Of Confusion

Finally, Temu has not alleged plausible facts that Roadget's arcade-style games are likely to confuse or mislead consumers into believing the products from the two brands come from the same source. *Globalaw*, 452 F. Supp. 2d at 47–8. "Courts in this district consider the eight *Polaroid* factors in assessing likelihood of confusion: (i) the strength of the plaintiff's mark; (ii) the degree of similarity between the two marks; (iii) the proximity of the parties' products; (iv) the likelihood that the prior user will bridge the gap between its market and the second user's market; (v) evidence of actual confusion; (vi) the defendant's intent; (vii) the quality of the defendant's product; and (viii) the sophistication of customers in the relevant market." *Adams, Nash & Haskell, Inc. v. United States*, No. 20-1916 (RC), 2021 WL 1340918, at *6 (D.D.C. Apr. 9, 2021). Considering these factors, Temu has not plausibly alleged a likelihood of confusion.

Temu's alleged trade dress is weak; it is not registered and simply uses common arcade-style games that are prevalent on countless retail websites. The games are similar only to the extent they both use common arcade-style games. Significantly, the games clearly indicate their respective brands which refutes any likelihood of confusion. *See* Compl. ¶¶ 187, 194, 203; *Leisurecraft Products, Ltd.*, 1981 WL 40516, at *2 (dismissing trade dress infringement claim finding "[n]o consumer confusion is likely to occur between these packages" where the materials prominently displayed the names of the relevant brands). Finally, Temu has not alleged facts

---

[9]   Temu's arcade-style games have not been in use long enough to acquire secondary meaning, since it did not launch its website in the U.S. until September 2022, Compl. ¶ 1, and its popularity did not surge until February 2023, Compl. ¶ 192. *See also Bubble Genius LLC*, 239 F. Supp. 3d at 595 (holding secondary meaning has been found when continuous exclusive usage of a trade dress occurred over a five-year period).

indicating actual consumer confusion, alleging only that "[Roadget's] unauthorized use of Temu's Arcade Trade Dress is likely to cause confusion."  Compl. ¶ 204.  There is no plausible likelihood of confusion between Roadget's and Temu's arcade-style games.  *See Leisurecraft Products, Ltd.*, 1981 WL 40516, at \*2; *Adams, Nash & Haskell*, 2021 WL 1340918, at \*6 (dismissing complaint where plaintiff failed to allege sufficient facts as to likelihood of confusion).

## V.   TEMU'S COUNT V AND VI FOR TRADE SECRET MISAPPROPRIATION FAILS FOR MULTIPLE REASONS

Temu also asserts misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.* (the "DTSA") (Claim V), and the D.C. Code § 36-401, *et seq.* (the "DCUTSA") (Count VI).  Temu's trade secret allegations suffer from numerous problems.

### A.   Temu's Trade Secret Claims Are Based Exclusively On Foreign Conduct Over Which The DTSA And The DCUTSA Are Inapplicable

First, neither statute covers the foreign conduct underlying Temu's trade secret allegations. The DCUTSA contains no provision allowing for extraterritorial application.  *See* § 36-401, *et seq.* The DTSA applies to foreign conduct only where:  "(1) the offender is a natural person who is a citizen or permanent resident alien of the United States, or an organization organized under the laws of the United States or a State or political subdivision thereof; or (2) an act in furtherance of the offense was committed in the United States."  18 U.S.C. § 1837.

In support of its trade secret claims, Temu alleges that its sellers in China are provided access to a seller portal with "a wide variety of Temu's commercial and financial information[,]" Compl. ¶ 207; that Temu's sellers were detained and coerced for Shein to gain portal access*, id.* ¶ 208; and that there is now "threatened misappropriation of Temu's commercial and financial trade secrets[,]" *id.* ¶ 209.  Nothing in Temu's allegations suggests that the "offender"—whose identity is unclear—is a citizen of the U.S. or organized under the laws of the U.S.  18 U.S.C.

§ 1837(1).  Roadget is organized under Singapore law, Compl. ¶ 26, and there are no allegations suggesting that Shein Technology LLC had anything to do with these allegations.

Temu also fails to allege any "act in furtherance" of trade secret misappropriation that occurred in the U.S.  18 U.S.C. § 1837(2).  All of the alleged conduct took place in China.[10] Compl. ¶¶ 206–11.  Courts have found that the DTSA may apply extraterritorially only in cases with specific, concrete allegations of actions tied to misappropriation occurring in the U.S., while conclusory statements and weak, generalized allegations untethered to misappropriation in the U.S. are insufficient.  *Compare Medimpact Healthcare Sys., Inc. v. IQVIA, Inc.*, No. 19cv1865-GPC(DEB), 2022 WL 6281793, at *26 (S.D. Cal. Oct. 7, 2022) (permitting extraterritorial application where multiple specific acts predicate to offense likely occurred in California) *and Motorola Sols., Inc. v. Hytera Comm. Corp. Ltd.*, 436 F. Supp. 3d 1150, 1165 (permitting extraterritorial application where it was "undisputed" that defendants "advertised, promoted, and marketed products embodying the allegedly stolen trade secrets domestically at numerous trade shows"), *with Aldini AG v. Silvaco, Inc.*, No. 21-cv-06423-JST, 2022 WL 20016826, at *14–15 (N.D. Cal. Aug. 3, 2022) (dismissing trade secret claims due to no extraterritorial application where allegations of related communications in the U.S. were "nothing more than bare assertions"), *and Bepex Int'l, LLC v. Micron BV*, No. 19-cv-2997 (KMM/JFD), 2023 WL 2975699, at *10 (D. Minn. Apr. 17, 2023) (dismissing trade secret claims due to no extraterritorial application because plaintiff's allegations connecting the misappropriation to the U.S. was too weak).  Because Temu fails to allege *any* U.S. conduct related to the alleged misappropriation, Temu's trade secrets claims are beyond the territorial reach of the law and must be dismissed.

---

[10]   Roadget disputes that any of these alleged actions actually occurred, however, even assuming the truth of these allegations for purposes of this Motion to Dismiss only, as the Court is required to do, Temu does not state plausible claims for relief.

B.       **Temu Has Not Pled Facts To Establish Any Protectable Trade Secret**

Second, Temu has failed to state plausible facts to identify a protectable trade secret.  "To bring a claim under either the [DTSA] or the [DCUTSA], a plaintiff must demonstrate the existence of a trade secret that has been misappropriated."  *Meyer Grp., Ltd. v. Rayborn*, No. CV-19-1945 (ABJ), 2020 WL 5763631, at \*4 (D.D.C. Sept. 28, 2020).   "To state a claim for misappropriation under the DTSA, a plaintiff must plausibly allege that [i] it possessed a trade secret, and [ii] the defendant misappropriated the trade secret."  *Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Global, Inc.*, 602 F. Supp. 3d 663, 671 (S.D.N.Y. 2022) (citation omitted).  "The elements of a DCUTSA claim are: (1) the existence of a trade secret; and (2) acquisition of the trade secret by improper means, or improper use or disclosure by one under a duty not to disclose." *Econ. Rsch. Servs., Inc. v. Resol. Econ., LLC*, 208 F. Supp. 3d 219, 232 (D.D.C. 2016) (quotation marks omitted).  "The threshold inquiry in every trade secret case is whether or not there is a trade secret to be misappropriated."  *Aristotle Int'l Inc. v. Acuant, Inc.*, No. 22-cv-741 (DLF), 2023 WL 1469038, at \*7 (D.D.C. Feb. 2, 2023) (citation omitted).

Temu fails to allege *what information* constitutes the alleged trade secret in the first place. Under the DTSA, trade secrets may include information like "patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes" *if* the owner "has taken reasonable measures" to keep the information secret, and *if* the information derives independent economic value from not being generally known or readily ascertainable to the public.  18 U.S.C. § 1839(3).  The definition under the DCUTSA is similar.  *See* D.C. Code § 36-401(4)(A)–(B); *see also Howard v. Goodman*, No. 20-cv-2187 (DLF), 2022 WL 4464978, at \*4 (D.D.C. Sept. 26, 2022).  Temu must "describe the subject matter of the trade secret with sufficient particularity to separate [the trade secret] from matters of

17

general knowledge in the trade." *Pellerin v. Honeywell, Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012); *see also Econ. Rsch. Servs.*, 208 F. Supp. 3d at 232–33.  The allegations must "permit the defendant to ascertain at least the boundaries within which the secret lies[,]" and conclusory, generalized allegations will not suffice.  *Pellerin*, 208 F. Supp. 3d at 988.

Temu asserts in conclusory fashion that the "commercial and financial information that [Roadget] obtained . . . is confidential, proprietary, and constitutes a trade secret within the meaning of both the [DTSA] and the [DCUTSA]."  Compl. ¶ 209.  These are precisely the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," that "do not suffice" to state a cause of action and that must therefore be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Temu's conclusory allegations mirror those commonly dismissed due to inadequate identification of trade secrets under both the DTSA and the DCUTSA.  *See, .e.g.*, *Econ. Rsch. Servs.*, 208 F. Supp. 3d at 233 (dismissing trade secret claims because "[w]ithout supporting details, plaintiff's assertion that the allegedly misappropriated information constitutes a trade secret is nothing more than a legal conclusion cast in the form of a factual allegation") (internal alterations omitted); *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (dismissing trade secret claims where plaintiff "set out its purported trade secrets in broad, categorical terms, more descriptive of the types of information that generally *may* qualify as protectable trade secrets than as any . . . trade secrets [plaintiff] has a basis to believe actually were misappropriated here") (emphasis in original); *ProV Int'l, Inc. v. Lucca*, No. 8:19-cv-978-T-23AAS, 2019 WL 5578880, at *3 (M.D. Fla. Oct. 29, 2019) (dismissing trade secret claims with "conclusory assertion that the defendants misappropriated 'proprietary practices' and 'operating procedures'").  Absent plausible facts supporting the existence of protectable trade secrets, these claims should be dismissed.

C.     **The Trade Secret Claims Also Fail Because Temu Has Not Alleged Sufficient Efforts To Safeguard The Purported Trade Secrets**

Temu also fails to allege it has properly safeguarded information through reasonable efforts.  Under both the DTSA and the DCUTSA, the owner of a trade secret "must use reasonable efforts to safeguard its secrecy."  *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 82 F. Supp. 3d 344, 360 (D.D.C. 2015); *see also Howard*, 2022 WL 4464978, at *4.  Temu's allegations that it takes "reasonable protective measures," Compl. ¶ 211, to safeguard its information are conclusory, and do not suffice.  *See Econ. Rsch. Servs., Inc.*, 208 F. Supp. 3d at 233 (dismissing trade secret claims where "the Complaint contain[ed] no factual allegations . . . that [plaintiff] used reasonable efforts to safeguard its secrecy").  At most, Temu points to confidentiality agreements, text verification, and user credentials, Compl. ¶ 209, which are insufficient.  *See Elsevier Inc. v. Doctor Evidence, LLC*, No. 17-cv-5540(KBF), 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) ("Taking steps to protect information through a confidentiality agreement does not, on its own, suggest the existence of bona fide trade secrets.").  In fact, Temu concedes that its sellers—presumably thousands of Chinese merchants—all have access to this information, Compl. ¶ 207, undermining the plausibility that Temu takes "reasonable protective measures" to safeguard this information.  Temu's trade secret claims fail for this reason as well.[11]

---

[11]   Because Temu does not define its "commercial and financial information" or "treasure trove" of trade secrets, Compl. ¶¶ 206, 208, the Complaint fails to allege plausible facts demonstrating how the alleged trade secrets derive independent economic value from their secrecy, *see Gaubatz*, 82 F. Supp. 3d at 361 (dismissing trade secret allegations where plaintiffs did "not attempt to explain *how* the value of these compilations is derived from its secrecy—as is necessary to qualify as a trade secret") (emphasis in original); *Econ. Rsch. Servs., Inc.*, 208 F. Supp. 3d at 233 (dismissing trade secret claims where "the Complaint contain[ed] no factual allegations that would support an inference that any of the information defendants allegedly misappropriated was valuable because of its secrecy").

D.      **Temu Does Not Allege Plausible Facts Showing Acquisition, Disclosure Or Use Of The Purported Trade Secrets**

Finally, Temu fails to allege plausible facts demonstrating actual acquisition, disclosure, or use of its trade secrets by Roadget.  The DTSA "authorizes suits alleging three theories of trade secret misappropriation: (1) acquisition, (2) disclosure, and (3) use."  *Zaccari v. Apprio, Inc.*, 390 F. Supp. 3d 103, 113 (D.D.C. 2019).  Temu alleges only an "effort to misappropriate[,]" Compl. ¶ 206, and "use[] or [] the ability to use . . . credentials to access Temu's seller portal and obtain Temu's proprietary customer and financial information[,]" Compl. ¶ 208.  Temu's allegations are essentially that Roadget *might be able to access* some undefined "treasure trove" of unspecified trade secrets through log-in credentials, as opposed to actual acquisition, disclosure, or use of any trade secrets.  *See Zaccari*, 390 F. Supp. 3d at 113–14 ("At no point does [plaintiff] allege that [defendant] even possessed [specific software] or its source code, let alone that [defendant] improperly 'acquired,' 'disclosed,' or 'used' it within the meaning of the DTSA.").

VI.     **TEMU'S ANTITRUST CLAIMS FAIL FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE PLAUSIBLE CLAIMS FOR RELIEF (COUNTS VII-XIII)**

A.      **The Court Lacks Subject Matter Jurisdiction Over Temu's Antitrust Claims**

Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional authority to hear the case." *Westberg v. F.D.I.C.*, 926 F. Supp. 2d 61, 66 (D.D.C. 2013), *aff'd*, 741 F.3d 1301 (D.C. Cir. 2014).  "[T]he plaintiff bears the burden of establishing that the court has subject-matter jurisdiction." *Larsen v. U.S. Navy*, 486 F. Supp. 2d 11, 18 (D.D.C. 2007).  But because Rule 12(b)(1) "imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," a plaintiff's factual allegations "will bear closer scrutiny in resolving a 12(b)(1) motion

than in resolving a 12(b)(6) motion." *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (internal quotation marks and citations omitted).

Under the FTAIA, federal antitrust laws do not apply to conduct overseas unless such conduct involves "import commerce" and the foreign conduct that "gives rise to a claim" under the Sherman Act "has a direct, substantial, and reasonably foreseeable effect" on the United States. 15 U.S.C. § 6a. The D.C. Circuit has held that courts lack subject matter jurisdiction over antitrust claims arising from extraterritorial conduct unless they fall into the FTAIA's exceptions. *See Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.*, 417 F.3d 1267, 1269 (D.C. Cir. 2005) (dismissing complaint, "conclud[ing] that we are without subject matter jurisdiction under the FTAIA").

The FTAIA "initially lays down a general rule placing ***all*** (nonimport) activity involving foreign commerce outside the Sherman Act's reach" and then "brings such conduct back within the Sherman Act's reach ***provided that*** the conduct ***both*** (1) sufficiently affects American commerce, i.e., it has a 'direct, substantial, and reasonably foreseeable effect' on American domestic, import, or (certain) export commerce, ***and*** (2) has an effect of a kind that antitrust law considers harmful, *i.e.,* the 'effect' must 'giv[e] rise to a [Sherman Act] claim.'" *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 162 (2004) (alterations in original) (quoting the FTAIA). When applying the FTAIA, courts are guided by "prescriptive comity" which counsels against "apply[ing] American laws to foreign conduct insofar as that conduct causes independent foreign harm that alone gives rise to a plaintiff's claim." *Id.* at 156.

Temu fails to establish subject matter jurisdiction over the antitrust claims because (1) the alleged conduct does not constitute "import commerce", (2) the alleged conduct does not have a "direct, substantial, and reasonably foreseeable effect" on U.S. commerce, and (3) even if some

portion of the alleged conduct is subject to an FTAIA exception—and it is not—principles of comity militate against subject matter jurisdiction over Temu's antitrust claims.

### 1.   The Alleged Foreign Conduct Is Not "Import Commerce"

Temu does not allege facts supporting its antitrust claims that satisfy the definition of "import commerce" under the FTAIA.  Temu alleges that Roadget entered into "exclusive dealing" contracts in China with its suppliers (Compl. ¶ 5), published the names of suppliers who allegedly breached those agreements on a Chinese-language website (*Id.* ¶¶ 157, 160), and called suppliers into its "offices in Guangzhou, China" where Temu alleges "on information and belief" they were questioned about their work with Temu and had their phones inspected (*id*. ¶  162).  Temu expressly alleges that this suit is "necessitate[d]" because of Roadget's alleged conduct in China affecting its Chinese suppliers (*id.* ¶ 132), and claims  Roadget's conduct harms Chinese suppliers because it "forc[es] suppliers to forego selling on the Temu platform," and thereby "improperly restricts supplier growth, reach, and profitability." *Id.* ¶ 219.

Roadget's commercial relationships with its Chinese suppliers and their impact on suppliers' profitability are plainly not import commerce. *See, e.g., Kruman v. Christie's Int'l PLC*, 284 F.3d 384, 395 (2d Cir. 2002), *abrogated on other grounds by F. Hoffmann-La Roche*, 542 U.S. 155 ("[w]hen there is conduct directed at reducing the competitiveness of a foreign market . . . such conduct involves foreign trade or commerce"); *Motorola Mobility LLC v. AU Optronics Corp.,* 775 F.3d 816, 818 (7th Cir. 2015) (Posner, J.) (no import commerce where goods sold to foreign subsidiaries of party, and then imported by the party into the United States).  Because the alleged conduct is not "import commerce", the FTAIA bars Temu's antitrust claims unless Roadget's alleged actions overseas have a "substantial" domestic effect and proximately caused Temu's alleged injury.  *Empagran S.A.* 417 F.3d at 1268–1269.

22

2. **The Alleged Foreign Conduct Did Not Have A "Direct, Substantial, and Reasonably Foreseeable Effect" on U.S. Commerce That Proximately Caused Temu's Alleged Injury**

Under the "substantial domestic effect" exception courts examine "two distinct causation inquiries": (i) "whether the defendants' foreign conduct caused a cognizable domestic effect" and (ii) "whether that effect caused the plaintiff's injury." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 413–14 (2d Cir. 2014); *see also, Empagran S.A.*, 417 F.3d at 1271 (concluding "the domestic effects the appellants cite" did not proximately cause the appellants' injuries). "Consistent with the comity canon and general antitrust principles . . . courts have held that the domestic effect must proximately cause the plaintiff's injury." *Lotes*, 753 F.3d 395 at 414.

(a) **Temu Has Not Alleged Substantial Domestic Harm**

Temu's allegations fail to establish substantial domestic harm from Roadget's alleged conduct. Temu alleges that Roadget and other "ultra-fast fashion" market participants already sell to U.S. consumers at "materially lower, distinct price points" than other retailers. Compl. ¶ 134. Temu also alleges that, notwithstanding Roadget's alleged conduct, Temu is *presently* "regularly beat[ing] Shein on price for identical products." *Id.* ¶ 216. And Temu cannot plausibly allege that, absent Roadget's alleged misconduct, it would offer significantly lower prices than Roadget because it has alleged that margins in the purported market are already "razor thin." *Id.* ¶¶ 42, 149, 218. Thus, Temu's own allegations confirm it cannot establish substantial domestic harm. *cf. Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 858–59 (7th Cir. 2012) (finding "substantial" domestic effect where anticompetitive conduct caused six-fold increase of price in the U.S.).

(b) **Temu Has Not Alleged That Any Purported Domestic Harm Proximately Caused Temu's Alleged Injuries**

Temu also has not alleged facts to suggest that that any purported domestic harm is the proximate cause of Temu's alleged injuries. *Empagran S.A.*, 417 F.3d at 1271. On this issue, the

23

Second Circuit's decision in *Lotes* is particularly instructive.  In *Lotes*, a Taiwanese manufacturer sued a number of its competitors, alleging that they filed patent suits against the plaintiff and threatened its manufacturing partners in China in order to eliminate plaintiff as a competitor which, in turn, would "damage competition, increase prices, and harm consumers in the United States." *Id.* at 402.  The Second Circuit, following the D.C. Circuit's approach, rejected that argument, holding that allegations of higher consumer prices in the U.S. "did not cause Lotes's injury of being excluded from the market for USB 3.0 connectors—that injury flowed directly from the defendant's exclusionary foreign conduct."  *Id.*  The court explained:

> To the extent there is any causal connection between Lotes's injury and an effect on U.S. commerce, the direction of causation runs the wrong way.  Lotes alleges that the defendants' patent hold-up has excluded Lotes from the market, which reduces competition and raises prices, which are then passed on to U.S. consumers. Lotes's injury thus *precedes* any domestic effect in the causal chain.

*Id.* at 414 (emphasis in original); *see, also*, *Prevent DEV GmbH v. Adient PLC*, No. 20-CV-13137, 2021 WL 5585917, at *17 (E.D. Mich. Nov. 30, 2021) (holding plaintiff's alleged "causal chain goes the wrong way: [plaintiff's] injury precedes any domestic effect Defendants' actions may have had on United States markets.")

The same reasoning precludes Temu's claim here.  Temu alleges that Roadget engaged in anticompetitive conduct in China to interfere with Temu's relationships with Chinese suppliers. *See, e.g.*,  Compl. ¶¶ 5, 149-150, 154-155, 157-162, 168.  Temu alleges Roadget's interference with those Chinese suppliers has harmed Temu and, in turn, consumers in the U.S. have paid higher prices because Temu is unable to compete effectively in the U.S.  As in *Lotes,* the alleged domestic competitive harm—"depriv[ing] American consumers of lower-priced products through competition" with Temu (*Id.* ¶ 146)—is downstream from the alleged injury to Temu—reduced access to suppliers—which occurs in China and thus "precedes any domestic effect in the causal

chain." *Lotes*, 753 F.3d 395 at 414.[12]   Simply put, Temu would suffer the same alleged harm—
reduced access to suppliers in China—if Roadget engaged in the same alleged conduct but did not
sell any products into the U.S.[13]   That confirms that Temu's injuries were not proximately caused
by the alleged domestic effect and "the direction of causation runs the wrong way."   *Id*.

3.    **Principles Of Comity Also Confirm That Temu's Allegations Are Outside The Ambit Of The FTAIA**

Finally, comity prevents Temu from invoking this Court's subject matter jurisdiction over
its antitrust claims.[14]   The Supreme Court has held that the risk of "interference with a foreign
nation's ability to regulate its own commercial affairs" is not justified where only "some of the
anticompetitive conduct alleged here took place in America" and the "the higher foreign prices"
which caused the alleged injury "are not the consequence of any domestic anticompetitive conduct
sought to be forbidden by Congress." *F. Hoffmann-La Roche*, 542 U.S. at 156.

Here, Temu's antitrust claims would undoubtedly interfere with China's ability to regulate
its own commercial affairs.   Notably, Temu alleges that "several suppliers have filed suits against
Shein in China" challenging the intellectual property provisions in the agreements.   Compl. ¶ 217.

---

[12]   Nor can Temu argue that Roadget's alleged abuse of the copyright system, DMCA notices to
Temu, and purported shadow litigations against Temu proximately caused Temu's injury as part
of a "scheme."   Not only is this conduct immune from antitrust liability under the *Noerr-
Pennington* doctrine (*see* Section VI.C.4, *supra*) but further, Temu's own allegations confirm it
has not been excluded from the alleged market.   Compl. ¶ 187, 203.   *See Lotes Co. v. Hon Hai
Precision Indus. Co.*, 753 F.3d 395, 415 (2d Cir. 2014) ("Nothing in the complaint suggests that
the defendants' failure to license U.S. patents, standing alone, would have been sufficient to
exclude Lotes from the market.").

[13]   The Supplier Agreements contemplate world-wide sales; they are not limited to sales in the
U.S.   Compl. Ex. A § Part I.II.11(1), (8); *Id.* § Part II.D.1.

[14]   Temu's forum shopping is another reason to decline jurisdiction.   *Motorola Mobility LLC v.
AU Optronics Corp.,* 775 F.3d 816, 821 (7th Cir. 2015) ("No doubt Motorola thinks U.S.
antitrust remedies more fearsome than those available to its foreign subsidiaries under foreign
laws. But that's just to say that Motorola is asserting a right to forum shop.").

Thus, through this U.S. litigation—in which Temu seeks, among other things "an [o]rder enjoining Shein from entering into exclusive-dealing agreements with suppliers" (Prayer For Relief, ¶ P), a "public apology from Shein" to its suppliers (Prayer for Relief, ¶ I), and an order requiring Roadget to pay "restitution" to Roadget's suppliers (Prayer for Relief, ¶ R)—Temu seeks to extend U.S. laws to Chinese citizens and transactions, potentially interfering with cases that are already underway in China. Thus, the Supreme Court's concerns in *F. Hoffmann-La Roche* further counsel against the exercise of subject matter jurisdiction over Temu's antitrust claims.[15]

B.    **Temu's Antitrust Claims Suffer From Multiple Pleading Deficiencies**

Not only has Temu failed to establish subject matter jurisdiction over its antitrust claims, it fails to state plausible claims for relief on multiple grounds. Each of Temu's antitrust claims under the Sherman Act and D.C. law (Counts VII-IX and XI-XIII) require, among other elements, a showing of anticompetitive conduct, market power in a relevant market, and antitrust injury. *United States v. Microsoft Corp.*, 253 F.3d 34, 50, 51, 58-59, 69 (D.C. Cir. 2001) (Section 2 requires anticompetitive conduct, monopoly power in a relevant market,  and antitrust injury);

---

[15]   The Court also lacks subject matter jurisdiction over Temu's claims brought under the D.C.'s antitrust statutes (Counts XI-XIII). Here, because the relevant D.C. antitrust provisions are "patterned on" the Sherman Act, the Court should apply the FTAIA to Temu's D.C. antitrust claims. *WAKA LLC v. DC Kickball*, 517 F. Supp. 2d 245, 252 (D.D.C. 2007). Moreover, as noted in Section VII, the laws of D.C. do not apply extraterritorially. To hold otherwise, would raise federalism concerns, considerations that have led numerous federal courts across the country to limit the reach of state antitrust laws by the FTAIA. *See, e.g.*, *In re Intel Corp. Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452, 457–58 (D. Del. 2007) ("Congress' intent would be subverted if state antitrust laws were interpreted to reach conduct which the federal law could not") (citation and quotation omitted); *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, No. 19-md-02918-MMC, 2023 WL 3483242, at *5 (N.D. Cal. May 15, 2023) (collecting cases) ("district courts to have considered the matter have found, and this Court agrees, that state law antitrust claims are 'limited by the FTAIA to the same extent as any federal law claims'") (citation omitted); *Prevent DEV GmbH v. Adient PLC*, No. 20-CV-13137, 2021 WL 5585917, at *17 ("The Court further concludes Prevent's Sherman Act and attendant state law claims are barred by the FTAIA.").

*Mizlou Television Network, Inc. v. Nat'l Broad. Co.,* 603 F. Supp. 677, 683–85 (D.D.C. 1984) (Section 1 of Sherman Act and Section 3 of Clayton Act also require anticompetitive conduct, market power in a relevant market, and antitrust injury); *WAKA LLC v. DC Kickball*, 517 F. Supp. 2d 245, 249–252 (D.D.C. 2007) (if a complaint fails to state a claim under the Sherman Act it also fails to state a claim under D.C.'s antitrust laws). The Complaint falls woefully short pleading plausible facts to support each of these elements.

### 1. **Temu Fails To Allege Plausible Anticompetitive Conduct**

Temu's allegations of anticompetitive conduct focus on what it describes as "exclusive dealing agreements" with suppliers, which it claims are enforced through Roadget's Supplier Agreements, Supplier Statements, penalty notices, and alleged intimidation tactics. *See, e.g.*, Compl. ¶¶ 5, 30, 31, 47, 50, 67-70, 77, 114, 130-132, 142-151, 153-171. Temu also alleges Roadget's DMCA Notices sent to Temu and copyright lawsuits are anticompetitive, and part of a scheme to defraud the U.S. Copyright Office. Compl. ¶¶ 5, 34-132. These allegations are not only far-fetched, they fail to support a plausible claim for anticompetitive conduct.

### 2. **Roadget's Supplier Agreements Do Not Require Exclusivity and Do Not Substantially Foreclose Competition**

Exclusive dealing agreements raise antitrust concerns only if they substantially foreclose competitors from a significant portion of competitive opportunities. *See Microsoft Corp.*, 253 F.3d at 69 (the "requirement of a significant degree of foreclosure serves a useful screening function"). Here, the Court need not even consider the issue of substantial foreclosure because Roadget's Supplier Agreements are not exclusive. As demonstrated by the plain language of Exhibit A to Temu's Complaint, the agreement expressly contemplates that the suppliers may sell products to third parties. *See, e.g.*, Compl. Ex. A § Part I.II.8. And Temu admits that Roadget's suppliers do sell to (and/or through) Temu, as well as to other parties. Compl. ¶¶ 6, 48, 49, 61, 89. In fact,

Temu admitted in its D. Mass Compl. that it has "contracts with thousands of manufacturers that also do business with Shein" (D. Mass. Compl. at ¶ 172).  In fact, the only term referencing exclusive rights in the Supplier Agreement is in connection with Roadget's intellectual property. Compl. Ex. A § Part I.II.11 (granting Roadget exclusive license to use photos, videos, and designs of the products made for Roadget and assigning Roadget the intellectual property rights in the same).  Roadget's suppliers are free to make products for others, including Temu, as long as they do not infringe Roadget's intellectual property rights.  The Court can disregard Temu's conclusory allegations of "Exclusive Dealing Agreements" in light of the actual terms of the Supplier Agreement attached to Temu's Complaint.  *See Ju v. Carter*, No. CV 14-391 (CKK), 2015 WL 5168251, at *1 (D.D.C. Aug. 31, 2015) ("[W]hen a written instrument is attached to a complaint and it contradicts the allegations in the complaint, the written instrument controls.")

Because the Supplier Agreements are not exclusive, Temu's allegations that these agreements have "foreclosed Temu from access to approximately 70-80% of ultra-fast fashion suppliers" which allegedly results in Temu having "access to only 10-20% of the overall capacity of ultra-fast fashion suppliers" (Compl. ¶ 213) are conclusory and not plausible.  Temu previously alleged that there are "tens of thousands" of manufacturers that supply to the purported "ultra fast fashion" industry (D. Mass. Compl. ¶ 1), and Temu is doing business with thousands of the same manufacturers as Roadget. (*id.* at ¶ 172).  Even assuming the truth of Temu's current allegation that Roadget has contracts with more than 8,000 of these manufacturers (Compl. ¶ 141), that still leaves thousands, if not tens of thousands, of manufacturers to which Temu has access.  Yet, the most Temu can allege "on information and belief" no less, is that "multiple," "many," and "several" suppliers have stopped supplying Temu in favor of Roadget, which does not plausibly

establish substantial foreclosure from the market.[16]  "Multiple," "many," and "several" is a far cry from "thousands" or "tens of thousands." And if there were thousands or tens of thousands of such suppliers refusing to do business with Temu because of Shein, Temu would not have to make that allegation upon information and belief; it would be apparent.  Further undermining the plausibility of Temu's conclusory allegations of foreclosure are its allegations of continued success as an active market participant.  *See, e.g. id.* ¶¶ 187, 200, 201, 203.

In any event, the Supplier Agreements are of relatively short duration and terminable at will by either party on 30-days' notice, rendering any restraint not actionable as *de minimis*. Compl. Ex. A, §§ Part I.II.2, Part 2.J.2; *see Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 977–78 (6th Cir. 2000) (plaintiff failed to plead substantial foreclosure where "the exclusive contracts were of limited duration . . . and customers were free to seek other power generators at the conclusion of the contracts"); *Sterling Merch., Inc. v. Nestle, S.A.*, 656 F.3d 112, 124 (1st Cir. 2011) ("Short contract terms and low switching costs generally allay most fears of injury to competition") (citing 11 Areeda & Hovenkamp, Antitrust Law, ¶ 1802, at 94).  Temu's reliance on Roadget's Supplier Agreements to establish anticompetitive conduct is without merit.

3.    **The Alleged Supplier Statement, Penalty Notices, And Fines Concern Infringing Conduct And Are Not Anticompetitive**

Temu also suggests the Roadget's Supplier Statement, alleged penalty notices and liquidated damages, and other conduct relating to Roadget's suppliers, is anticompetitive.  But Temu's allegations confirm these documents and the imposition of liquidated damages simply seek

---

[16]    *See* Compl. ¶ 168 ("[u]pon information and belief, *multiple* suppliers have ceased doing business with Temu . . . and *multiple* suppliers who otherwise would have done business with Temu have declined to do so as a result of Shein's intimidation tactics"); *see also id.* ¶ 155 ("*several* manufacturers who decided to not work with Temu"), ¶ 162 ("[u]pon information and belief, *several* suppliers…"), ¶¶ 151, 161 ("*many* suppliers…").

to protect Roadget's intellectual property rights, which is not anticompetitive.  The Supplier Statement requires suppliers to certify that they are not "cooperat[ing] with Temu on the production and sales of the Infringing Products" or supplying "the Infringing Products or their images displayed and sold on the Temu website."  Compl. ¶ 153.  The liquidated damages alleged by Temu are imposed only in the event of "violations or breaches" of the Supplier Agreement.  Compl. ¶ 158.  And the alleged "penalty notices" remind manufacturers not to support Temu's infringing conduct, including not to sell "Shein products with the same designs or images on other platforms."  Compl. ¶ 160.  Protecting one's intellectual property rights is not anticompetitive.  *See e.g., Advanced Computer Servs. Of Michigan, Inc. v. MAI Sys. Corp.*, 845 F. Supp. 356, 370 (E.D. Va. 1994) ("MAI's enforcement of its copyrights does not constitute copyright misuse, nor does it constitute anticompetitive conduct in violation of § 2 of the Sherman Act."); *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 712 (D. Md. 2012), *modified on clarification*, 904 F. Supp. 2d 530 (D. Md. 2012), *and aff'd*, 722 F.3d 591 (4th Cir. 2013) ("MRIS's refusal to grant AHRN a license is not probative of an unlawful or anticompetitive purpose, especially where AHRN's offer followed its infringement of MRIS's copyrights and the receipt of a cease-and-desist letter.").

4. **DMCA Notices And Copyright Lawsuits Are Immune Under *Noerr-Pennington***

Temu alleges that Roadget's DMCA Notices and copyright litigation constitute anticompetitive conduct.  Compl. ¶¶ 5, 34-54, 71-101.  However, these pre-litigation and litigation efforts cannot form the basis of antitrust liability as a matter of law because they are protected petitioning activity under the *Noerr-Pennington* doctrine.[17]  That doctrine immunizes "petitioning

---

[17]   *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 669 (1965) and *E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961).

the government for redress" and includes "enforcing one's intellectual property rights in court." *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Novartis Pharms. Corp.*, 902 F.3d 1, 4-5 (1st Cir. 2018).

To overcome the presumption of *Noerr-Pennington* immunity, a litigant must allege that the protected litigation activity was a "sham," i.e. that it is "(1) is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits and (2) is brought with the specific intent to further wrongful conduct through the use [of] the governmental process—as opposed to the outcome of that process." *Nader v. The Democratic Nat. Comm.*, 555 F. Supp. 2d 137, 157 (D.D.C. 2008) (dismissing complaint), *aff'd on other grounds sub nom. Nader v. Democratic Nat. Comm.*, 567 F.3d 692 (D.C. Cir. 2009) (citation and quotation marks omitted). Only if a challenged activity "is objectively meritless may a court examine the litigant's subjective motivation." *Covad Commc'ns Co. v. Bell Atl. Corp.*, 398 F.3d 666, 677 (D.C. Cir. 2005) (*quoting Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60–61 (1993)). Temu "bears the burden to demonstrate that the sham exception applies." *Nader*, 555 F. Supp. 2d at 157.

The D.C. Circuit has recognized that pre-litigation activities are protected as "incidental" conduct if "the conduct and nature of the activity . . . can be characterized as typical 'pre-litigation' activity[.]" *Venetian Casino Resort, LLC v. NLRB*, 484 F.3d 601, 612 (D.C. Cir. 2007); *see also, Globetrotter Software, Inc. v. Elan Computer Grp.*, Inc., 362 F.3d 1367, 1376–77 (Fed. Cir. 2004) (collecting cases, noting that "our sister circuits, almost without exception, have applied the Noerr protections to pre-litigation communications"); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929–33 (9th Cir. 2006) (holding pre-litigation letters are protected petitioning activity under *Noerr-Pennington*); *Enttech Media Grp. LLC v. Okularity, Inc.*, No. 220-CV-06298, 2020 WL 6888722,

at \*3 (C.D. Cal. Oct. 2, 2020) (holding DMCA takedown notices constitute petitioning activity for the purpose of the *Noerr-Pennington* doctrine in the RICO context).

Here, the sending of DMCA notices for suspected copyright infringement constitutes typical "pre-litigation" activity, as it is often a pre-cursor to litigation if the ISP refuses to remove the infringing content or the alleged infringer succeeds in having the content restored after sending a counter-takedown notice.  17 U.S.C. § 512(c)(3), (g)(2)(C).  When Temu failed to comply with many of the DMCA notices, Roadget sued Temu in the Illinois Action for numerous violations, including copyright infringement (Compl. ¶ 99), which led that court to issue a TRO against Temu, finding that Roadget "is likely to prevail on the merits of its claims against Defendants"  and temporarily enjoining Temu from "reproducing, publishing, distributing, importing, or publicly displaying any image, material, content, or design that is the same or substantially similar to the [Shein] copyrighted works." .  *See* RJN Ex. 3 at 2, 5..  This TRO precludes Temu from establishing the DMCA Notices or copyright litigation was objectively baseless.  *Mosdos Chofetz Chaim, Inc. v. Vill. Of Wesley Hills*, 701 F. Supp. 2d 568, 602 (S.D.N.Y. 2010) (finding grant of injunctive relief was "fatal" to argument that the litigation was "objectively baseless"); *Intellective, Inc. v. Mass. Mut. Life Ins. Co.*, 190 F. Supp. 2d 600, 608 n.2 (S.D.N.Y. 2002) ("[T]he fact that a state court granted a TRO and then a partial preliminary injunction precludes a finding that the litigation was 'objectively baseless.'"); *Sugar Busters, L.L.C. v. Brennan*, No. 98-CV-1562, 1999 WL 109564, at \*4 (E.D. La. Feb. 19, 1999) ("The court granted a preliminary injunction in the trademark-infringement action; thus, the lawsuit filed by Sugar Busters is not objectively baseless.").  Because Temu cannot establish the litigation was "objectively baseless", there is no need to address the subjective prong of the sham litigation test.  *Covad*, 398 F.3d at 677.  In any event, the Complaint

32

fails to allege plausible facts supporting this prong as well.  Thus, the DMCA Notices and copyright litigation cannot support Temu's antitrust claims.[18]

Without anticompetitive conduct, Temu's antitrust claims must be dismissed.

C.      **Temu Fails To Allege A Plausible Relevant Product Market In Which Roadget Has Market Power, Which Is Fatal To All Of Its Antitrust Claims**

A definition "of the relevant market for the product involved" is necessary to "appraise the exclusionary power" of the allegedly illegal conduct. *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177–78 (1965). "[I]t is clear that in all cases the plaintiff must both define the relevant market and prove the degree of foreclosure." *Microsoft Corp.*, 253 F.3d at 69; *Concord Assocs., L.P. v. Ent. Properties Tr.,* 817 F.3d 46, 53–55 (2d Cir. 2016) (affirming 12(b)(6) dismissal for flawed market definitions). Defining a relevant product market requires including "all products 'reasonably interchangeable by consumers for the same purposes'" and examining the extent to which "the ability of consumers to turn to other suppliers restrains a firm from raising prices above the competitive level." *Microsoft Corp.*, 253 F.3d at 51–52 (citations omitted).

Temu's "ultra-fast fashion" market is facially implausible and legally insufficient.  Temu fails to (and cannot) adequately allege how "ultra-fast fashion" products are not "reasonably interchangeable" with what it describes as fast-fashion products (or, for that matter, all apparel). Temu alleges in conclusory form that "[f]or ultra-fast fashion consumers, other options are not viable substitutes in part because of the staleness of the styles and the limited style options available." Compl. ¶ 137.  Temu also makes the conclusory allegation that "[o]ther garment retailers, including fast fashion retailers, are not reasonable substitutes for the ultra-fast fashion

---

[18]   Although Temu alleges that Roadget "voluntarily dropped" the Illinois Action (Compl. ¶¶ 59, 99), it admits "in late October 2023, Temu and Shein voluntarily dismissed their respective litigation against one another without prejudice" (*id.* ¶ 131).

experience in part because ultra-fast fashion platforms offer significantly more new styles, and these styles change effectively on a daily basis." *Id.*  But these allegations fail to explain why, for example, a shirt or dress offered by a purported "fast fashion" retailer such as Zara or even by large online retailers like Walmart or Amazon would not be substitutable for a garment offered by an "ultra-fast fashion" retailer such as Fashion Nova. *See Honey Bum, LLC v. Fashion Nova, Inc.*, No. 2:20-CV-11233-RGK-AS, 2021 WL 4205618, at *6 (C.D. Cal. Mar. 26, 2021) (dismissing antitrust claim because the alleged "Los Angeles-sourced fast fashion online clothing retail" was legally insufficient).

In fact, in its D. Mass Complaint Temu admitted, as it must, that "[c]onsumers who shop at ultra-fast fashion retailers might also shop at fast fashion outlets." D. Mass Compl. ¶ 35.  And, here, Temu alleges that some of the exact same products sold by Roadget are also sold by behemoth online retailers outside of even the fast-fashion industry. *See* Compl. ¶ 61 (alleging that some of Roadget's listings may also be found on "Amazon, eBay, Walmart, and Poshmark, among others").  Thus, Temu's definition "myopically exclude[s] interchangeable products." *See Honey Bum, LLC, v. Fashion Nova, Inc.*, 63 F.4th 813, 819 (9th Cir. 2023).[19]

In addition to not adequately alleging a relevant market, Temu has failed to plausibly plead that Roadget has market power within that relevant market.  Temu must allege that Roadget can "profitably raise prices substantially above the competitive level" through either "direct proof" or through "circumstantial evidence." *Microsoft Corp.*, 253 F.3d at 51.  Temu must plausibly allege facts showing that Roadget (i) has a "dominant share of a relevant market" and (ii) that its share "is protected by entry barriers." *Id.*  The "Supreme Court has never found a party with less than

---

[19]  Temu previously acknowledged that there were numerous competitors in both the "fast fashion" industry (e.g. Zara, H&M, Primark, Boohoo, GAP, and Uniqlo) and the so-called "ultra-fast fashion" industry (*e.g.*, FashionNova, Zaful, Cider, Zara).  D. Mass Compl. ¶¶ 28, 31.

75% market share to have monopoly power." *Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 174 (4th Cir. 2014). Temu alleges "[a]mong the ultra-fast fashion retailers, Shein is by far the largest competitor with more than 75% of U.S. market share by sales volume in 2022." Compl. ¶ 139. But this conclusory assertion is insufficient.

In *Fed. Trade Comm'n v. Facebook, Inc.*, 560 F. Supp. 3d 1, 4 (D.D.C. 2021), another court in this district addressed the requirements for pleading market power, particularly in a newly-defined market, like the one Temu proposes. The court dismissed the complaint which contained the "naked allegation that the [defendant] has had and still has a 'dominant share of th[at] market (in excess of 60%).'" *Id.* Although the court noted that "[s]uch an unsupported assertion might (barely) suffice in a Section 2 case involving a more traditional goods market," it was insufficient because "this case involves no ordinary or intuitive market." *Id.* The court held that in the context of a newly-defined market, a plaintiff must plead "the exact metes and bounds of what even constitutes a [relevant] service—i.e., which features of a company's mobile app or website are included in that definition and which are excluded." *Id.* In such a context, the court held that the FTC's "inability to offer *any* indication of the metric(s) or method(s) it used to calculate Facebook's market share render[ed] its vague '60%-plus' assertion too speculative and conclusory to go forward." *Id.*

Similarly, Temu has failed to allege plausible facts to support its conclusory 75% market share. Temu does not explain how it calculated the sales volume or from what source, but its reliance on 2022 data conveniently excludes most of Temu's sales since it did not launch in the U.S. until September of 2022 and did not experience major growth until February 2023. Compl. ¶¶ 1, 192. Although Temu alleges that Walmart and Amazon offer some of the same products that are offered by Roadget, Temu does not allege whether any portion of their businesses are in ultra-

fast fashion, or how it partitioned those sales in its market share analysis.  Nor does Temu allege at what point a fast-fashion company becomes an "ultra-fast fashion" company.

Given the novel nature of the so-called "ultra-fast fashion" market, the onus is on Temu to plead plausible facts—such as, for example, the identity of other market participants, the number of suppliers in the market, the number that supply Temu, the number that supply other market participants, the number that overlap in supplying Roadget and other market participants,  and why Temu believes they belong in the ultra-fast fashion market as opposed to some other market. Without such *facts*, it is not clear how Temu is even arriving at its allegation that Roadget has "75% of U.S. market share" (Compl. ¶ 139) or if it is (more likely) made out of whole cloth. Temu's 75% "assertion [is] too speculative and conclusory to go forward."  *See Facebook*, 560 F. Supp. 3d at 4, 18  ("Even accepting that merely alleging market share 'in excess of 60%' might sometimes be acceptable, it cannot suffice in this context, where Plaintiff does not even allege what it is measuring").

Temu likewise fails to plead that Roadget's market share is protected by entry barriers. Indeed, Temu itself presents a case-study of the lack of barriers to entry. For example, although Temu alleges that "[i]n the first half of 2022, Shein's app was the most downloaded shopping app in the United States, eclipsing Amazon, with approximately 22.4 million downloads during those six months" (Compl. ¶ 141), Temu alleges that less than six months after it launched, it "surpass[ed] Amazon and Walmart to become most downloaded app in US" (Compl. ¶ 192), it achieved "more than 200 million worldwide downloads of the Temu shopping app as of September 2023" (Compl. ¶ 180), and there are "over eighty million monthly users [that] Temu maintains in the United States." (*id.*).  Thus, Temu's self-professed "meteoric rise to success" (Compl. ¶ 203) prove the lack of barriers to entry to support market power.

D.     **Temu Fails To Plausibly Plead Facts Demonstrating Antitrust Injury**

To allege an actionable antitrust claim, Temu must allege more than an injury to itself as a competitor, but rather, damage arising from injury to competition. *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998) ("[T]he plaintiff here must allege and prove harm, not just to a single competitor, but to the competitive process, i.e., to competition itself."). "This Court has clearly held injury to a single competitor does not suffice to constitute an injury to competition." *Johnson v. Comm'n on PresidentIal Debates*, 869 F.3d 976, 983 (D.C. Cir. 2017). Allegations of targeted efforts to drive *one* competitor out of the market are insufficient to support an antitrust injury. *See Brooke Grp. Ltd. V. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 225 (1993) ("Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws."). Yet, Temu alleges that Roadget targeted Temu and Temu alone,[20] which is insufficient to show antitrust injury. Temu's conclusory allegations of higher prices and harm to competition are also insufficient to plead antitrust injury. Compl. ¶¶ 146, 216. *See e.g., Asa Accugrade, Inc. v. Am. Numismatic Ass'n*, 370 F. Supp. 2d 213, 216 (D.D.C. 2005) (allegations that "'Defendants' [antitrust] violations ... have and continue to harm competition' . . . cannot survive a Rule 12(b)(6) challenge"); *Gross v. Wright*, 185 F. Supp. 3d 39, 49 (D.D.C. 2016) ("A plaintiff cannot federalize its private economic injuries 'merely by dressing them up in the language of antitrust'") (citation omitted). Nor can Temu rely upon the alleged harm to competition arising from conduct in China based on the FTAIA. *See* Section VI.A.

---

[20]   *See, e.g.,* Compl. ¶ 9 ("Shein's conduct targeted at Temu"); ¶ 27 ("scheme to interfere with Temu's U.S. growth"), ¶54 ("purpose of harming Temu"), ¶ 61 ("targeting Temu and Temu only"); ¶ 89 ("specifically to target Temu"); ¶ 130 ("anticompetitive scheme to block Temu's access"); ¶ 168 ("effect of Shein's campaign is to reduce competition by depriving U.S. consumers of the choice of two websites [Shein's and Temu's] for these products").

Moreover, Temu's alleged injury does not flow from conduct the antitrust laws are intended to prevent; rather, they flow from Roadget's efforts to protect its intellectual property. *See, e.g.,* Compl. ¶¶ 5, 22, 96.  There is no antitrust injury for this additional reason.  *See, e.g., Walgreen Co. v. AstraZeneca Pharms. L.P.*, 534 F. Supp. 2d 146, 151 (D.D.C. 2008) ("Plaintiffs are not able to show that enjoying the benefits of patent protection is exclusionary conduct under § 2 [of the Sherman Act]"); *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 997 (9th Cir. 1979) (holding no antitrust injury where defendant sought to enforce a valid patent); *see also*, *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1187 (1st Cir. 1994), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) (recognizing that the Copyright Act, like the Sherman Act was "designed ultimately to improve the welfare of consumers in our free market system" and thus "an author's desire to exclude others from use of its copyrighted work is a presumptively valid business justification" against any antitrust liability.).  Because the injury Temu alleges does not flow from conduct the antitrust laws were intended to prevent, it has not plausibly alleged antitrust injury, which is fatal to all of its antitrust claims.

E.     **Temu's Clayton Act Claim Fails For An Additional Reason As Well**

To state a violation of Section 3 of the Clayton Act, Temu must allege that Roadget had exclusive dealing contracts that conditioned the sale of goods, wares, merchandise, or other commodities upon the purchaser's "not us[ing] or deal[ing] in the goods . . . of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition . . . may be to substantially lessen competition." *Genetic Sys. Corp. v. Abbott Lab'ys*, 691 F. Supp. 407, 414 (D.D.C. 1988) (quoting Section 3 of the Clayton Act, 15 U.S.C. § 14).[21]

---

[21]   As explained in Section IV.B.2, the Supplier Agreements are not exclusive and Temu's allegations confirm it has not caused substantial foreclosure.

"The language of the statute defines liability in terms of a person who makes a sale or contracts for sale and nowhere provides for liability of the buyer." *McGuire v. Columbia Broad. Sys., Inc.*, 399 F.2d 902, 906 (9th Cir. 1968) (Defendant "is not the seller, and consequently no cause of action is created against it"). In *Genetic Systems Corp.*, this district dismissed exclusive dealing claims against the purchaser of testing equipment, finding that "Section 3 does not impose liability on purchasers for exclusive dealing contracts." 691 F. Supp. at 414; *see also Marion Healthcare, LLC v. S. Illinois Healthcare,* No. 12-CV-871-SMY-PMF, 2015 WL 3466585, at *4–*5 (S.D. Ill. May 29, 2015) (dismissing Section 3 claims, noting "[c]ourts have held that Section 3 of the Clayton Act defines liability in terms of a person who makes a sale or contracts for sale, but does not provide for liability of the buyer"). The Supplier Agreements not only lack the requisite exclusivity as explained above, but Roadget is the buyer of the products (Compl. ¶¶ 69, 118-119), not the seller, so it cannot be liable under Section 3. "[T]he Clayton Act has not been applied to situations, such as here, where a buyer [Roadget] is alleged to have required [its Suppliers] to refrain from selling to other buyers (e.g., [Temu])." *In Truck-Lite Co., LLC v. Grote Indus., Inc.*, No. 18-CV-599-JLS-MJR, 2021 WL 8322467, at *15 (W.D.N.Y. Sept. 17, 2021).[22]

## VII.    TEMU'S DERIVATIVE COMMON LAW "UNFAIR COMPETITION" CLAIM (COUNT XIV) FAILS WITH THE UNDERLYING CLAIMS

"[T]he tort of unfair competition is actionable at D.C. common law only in 'limited' circumstances." *K&D, LLC v. Trump Old Post Off., LLC*, No. CV 17-731 (RJL), 2018 WL 6173449, at *3 (D.D.C. Nov. 26, 2018), *aff'd,* 951 F.3d 503 (D.C. Cir. 2020) (citation omitted). The tort "is not defined in terms of specific elements, but instead by the description of various acts

---

[22]   Temu's Section 3 claim also fails because it is based on foreign commerce. Areeda & Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application (CCH) 272 ("The proscriptions of the Clayton Act generally do not reach foreign commerce at all.")

that would constitute the tort if they resulted in damage." *Bus. Equip. Ctr., Ltd. v. DeJur-Amsco Corp.*, 465 F. Supp. 775, 788 (D.D.C.1978).

To the extent that Temu's unfair competition claim is based on its trade dress infringement claim (Compl. ¶¶ 334-338), it fails for the same reasons set forth in Section IV, *supra*; *see Jericho Baptist Church Ministries, Inc. (D.C.) v. Jericho Baptist Church Ministries, Inc. (Maryland)*, No. 16-CV-00647 (APM), 2020 WL 1703937, at *8 (D.D.C. Apr. 8, 2020) ("In the District of Columbia, the torts of unfair competition and common law trademark infringement are analyzed under the same standard as the Lanham Act."). To the extent that Temu's unfair competition claim is premised on Roadget's alleged "anticompetitive and exclusionary scheme" (Compl. ¶ 339), it must be dismissed because Temu has not alleged plausible facts to support this alleged scheme (as discussed above) and, in any event, there is no similar tort under D.C. unfair competition law. *See, e.g.*, *Bus. Equip. Ctr., Ltd.* 465 F. Supp. at 788 (listing claims that give rise to unfair competition claim and holding that "a refusal to deal" is not one of them). To the extent that Temu's unfair competition claim is premised on its tortious interference and abuse of process claims, it fails for the same reasons set forth in Sections VIII, IX, *supra*. Finally, to the extent that the claim is premised on other acts that allegedly occurred in China, those acts are beyond the territorial reach of D.C. laws and not actionable. "[T]he extraterritoriality principle provides that '[r]ules of the United States statutory law, whether prescribed by federal or state authority, apply only to conduct occurring within, or having effect within, the territory of the United States.'" *See Environmental Defense Fund, Inc. v. Massey*, 986 F.2d 528, 530 (D.C. Cir. 1993); *see also, Fastov v. Christie's Int'l PLC,* 2006 WL 8460194,  No. 1-97-CV-0578, at *9 (D.D.C. Mar. 1, 2006) (holding that the D.C. consumer protection law does not apply to conduct in London because "[t]here is a well-established presumption that domestic laws are not intended to operate extraterritorially.").

VIII. **TEMU FAILS TO ALLEGE PLAUSIBLE FACTS TO SUPPORT ITS TORTIOUS INTERFERENCE CLAIMS (COUNTS XV-XVII)**

Temu fails to sufficiently plead tortious interference with contracts (Count XV), business relations (Count XVI), or prospective business (Count XVII) under D.C. common law.  To state a claim for tortious interference with a contract or business relationship, Temu must establish the "1) existence of a valid contractual or other business relationship; (2) [Roadget's] knowledge of the relationship; (3) intentional interference with that relationship by [Roadget]; and (4) resulting damages."  *Whitt v. Am. Prop. Constr., P.C.*, 157 A.3d 196, 202 (D.C. 2017).  Moreover, the alleged interference "must be improper."  *Bowhead Info. Tech. Serv. LLC v. Catapult Tech. Ltd.*, 377 F. Supp. 2d 166, 174 (D.D.C. 2005).  "The elements of tortious interference with prospective business advantage mirror those of interference with contract."  *Casco Marina Dev., L.L.C. v. D.C. Redevelopment Land Agency,* 834 A.2d 77, 84. (D.C. App. 2003).

A. **Temu's Failure To Plead The Contracts At Issue Dooms Count XV**

First, with respect to its tortious interference with contracts claim, Temu fails to plead the contracts at issue with specificity.  Temu's general allegation that it has "existing contracts with ultra-fast fashion manufacturers" (Compl. ¶ 342) is insufficient because Temu "never pleads any details regarding the nature of any 'contract' . . ., such as whether [it] had any written or oral agreement and the terms of said agreement."  *See e.g., Gov't. Rel. Inc. v. Howe*, No. 05-1081, 2007 WL 201264, at *9 (D.D.C. Jan. 24, 2007) (dismissing tortious interference with contracts for failure to plead the contracts with specificity).  Without those crucial details, Temu cannot establish that it has valid contracts, "the terms of which [Roadget] could interfere."  *Gaujacq v. Electricite de France Intern. N.A., Inc.*, 572 F. Supp. 2d 79, 92 (D.D.C. 2008), *aff'd in part and remanded sub nom. Gaujacq v. EDF, Inc.*, 601 F.3d 565 (D.C. Cir. 2010); *see also 3M Co. v.*

41

*Boulter*, 842 F. Supp. 2d 85, 116 (D.D.C. 2012) (dismissing claim because plaintiff "has given no specific examples of actual contracts").

### B.      Temu Has Not Alleged Improper Means

Second, all of Temu's tortious interference claims should be dismissed because Temu fails to allege improper means.  Temu must demonstrate that Roadget engaged in conduct that is "egregious; for example, it must involve libel, slander, physical coercion, fraud, misrepresentation, or disparagement."  *Modis, Inc. v. InfoTran Sys., Inc.*, 893 F. Supp. 2d 237, 241 (D.D.C. 2012).

Temu's tortious interference claims rely heavily on alleged interference that occurred outside of the U.S., such as false imprisonment and phone seizures that allegedly took place in Guangzhou, China (Compl. ¶ 162).  As explained above, D.C. laws do not apply extraterritorially.  Thus, Temu's reliance on alleged conduct in China cannot provide the requisite improper means.

Roadget's alleged conduct is also privileged because it "acts in order to protect 'a present, existing economic interest.'"  *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 326 (D.C. 2008).  Temu's allegations confirm Roadget has an economic interest under its Supplier Agreements to protect its intellectual property.  *See e.g.* Compl. ¶¶ 36, 144.  Enforcing one's legal and contractual rights is a legally protected interest that does not constitute improper means.  *See In re Ashby Enterprises, Ltd.*, 47 B.R. 394, 397 (D.D.C. 1985) ("[Defendant] was merely seeking to enforce a prior contract. . . ; his attempts to settle the claim and his later threats to resort to legal remedies were not inappropriate means of protecting the rights . . .").

To the extent Temu's tortious interference claims are premised on the DMCA Notices (*See, e.g.,* Compl. ¶¶ 34, 89, 94, 103, 220), this claim is preempted.  Section 512(f) provides the sole remedy for contested DMCA takedown notices, and preempts state law tortious interference claims based on the same.  *See, e.g.*, *Complex Media, Inc. v. X17, Inc.*, No. CV-1807588, 2019 WL 2896117, at *5–6 (C.D. Cal. Mar. 4, 2019) (dismissing state law claim for intentional interference

with contract as preempted by the DMCA); *Tine Bak LLC v. Selkatz, Inc.*, No. CV 20-5065, 2020 WL 9074806, at *5–6 (C.D. Cal. Nov. 30, 2020) ("[T]he only facts in the [c]omplaint supporting a claim for tortious interference are that [d]efendant filed a false infringement notice. This is irreconcilable with the DMCA's notice scheme, meaning the claim is preempted."); *Plus EV Holdings, Inc. v. Thras.io, Inc.*, No. 20-00197-CV-W-BP, 2020 WL 8454919, at *6 (W.D. Mo. July 17, 2020) ("state tort claims are preempted to the extent they rely on claims of copyright infringement or the filing of false DMCA notices").

Moreover, the DMCA Notices cannot form a basis for liability because they are protected petitioning activity under *Noerr-Pennington*.  "This Circuit has extended Noerr–Pennington immunity from its original antitrust context to common law torts, including intentional interference with contract and abuse of process." *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 19 (D.D.C. 2014), *aff'd*, 629 Fed. Appx. 1 (D.C. Cir. 2015); *see also Autronic Plastics, Inc. v. Apogee Lighting, Inc.*, No. 19-CV-6268, 2021 WL 8322144, at *5 (E.D.N.Y. Mar. 24, 2021) (dismissing tortious interference claims because *Noerr-Pennington* protected pre-litigation notices).  Because the DMCA Notices are protected petitioning activity and the Complaint fails to allege plausible factual allegations that the DMCA Notices at issue were a "sham" under the *Noerr-Pennington* doctrine, they cannot support tortious interference claims.  *See* Section VI.B.4.

IX.    **TEMU'S ABUSE OF PROCESS CLAIM FAILS TO STATE A CLAIM (COUNT XVIII)**

Temu fails to plead facts to support a viable abuse of process claim (Count XVIII). "[A]buse of process occurs when process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do." *Houlahan v. World Wide Ass'n of Specialty Programs & Schs.*, 677 F.Supp.2d 195, 199 (D.D.C. 2010) (internal

quotation marks omitted).  Temu must establish "two essential elements to an abuse of process claim: (1) the existence of an ulterior motive; and (2) an *act* in the use of process other than such as would be proper in the regular prosecution of the charge."  *Id.* (internal quotation marks omitted).  The Complaint fails to allege plausible facts to make this showing.

The sole basis for Temu's abuse of process claim is that Roadget directly or by proxy filed copyright infringement litigations against Temu.[23]  Compl. ¶¶ 99-100, 362.  "[T]he mere pursuit of a lawsuit, just like the mere filing [of] a lawsuit, does not support an abuse of process claim." *US Dominion, Inc. v. MyPillow, Inc.*, No. 1-21-cv-0445, 2022 WL 1597420, at *3–4 (D.D.C. May 19, 2022) (dismissing abuse of process claim because "[plaintiff] fails to identify any act that [defendant] has taken other than filing and pursuing its lawsuit"); *Kopff v. World Research Group, LLC*, 519 F. Supp. 2d 97, 100 (D.D.C. 2007) ("simply filing a lawsuit is not actionable, regardless of the motive that may have prompted the suit").

"Instead, [Temu] must allege that [Roadget], *after filing its suit*, performed some act that perverted the judicial process."  *U.S. Dominion, Inc. v. Powell*, No. 1-21-CV-00040, 2022 WL 4534942, at *1 (D.D.C. Sept. 28, 2022).  "Such acts usually involve some form of extortion . . . ." *Rockwell Capital Partners, Inc. v. CD Intl. Enterprises, Inc.*, 311 F. Supp. 3d 52, 55 (D.D.C. 2018) (internal quotation marks omitted).  Here, because the only affirmative act that Temu alleges is Roadget initiating lawsuits (Compl. ¶¶ 99-100, 362), it fails to plausibly allege facts to support a perversion of the legal process.  *Id.* at 55–56 ("Absent any other alleged threat or extortionate

---

[23]  The so-called "proxy copyright litigations" Temu alleges cannot form the basis for its abuse of process claim against Roadget.  As acknowledged by Temu, the five alleged "proxy cases" were not brought by Roadget.  Compl. ¶ 99.  Because "liability c[a]nnot be imputed to a third party not involved with the misapplication of process," the "proxy copyright litigations" cannot support an abuse of process claim against Roadget.  *Yellowitz v. J. H. Marshall & Associates, Inc.*, 284 A.2d 665, 667 (D.C. App. 1971).

conduct . . ., the filing of a few misguided motions does not plausibly amount to a perversion of

the legal process to achieve a collateral purpose.").[24]

<u>**CONCLUSION**</u>

For the reasons explained herein, the Court should grant Roadget's Motion to Dismiss.

---

[24]   Roadget's copyright litigation against Temu is also immune under *Noerr-Pennington*, and cannot support its abuse of process claim. *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 19 (D.D.C. 2014), *aff'd,* 629 Fed. Appx. 1 (D.C. Cir. 2015); *Nader v. The Democratic Nat. Comm.*, 555 F. Supp. 2d 137, 157 (D.D.C. 2008).  Because the court entered a temporary restraining order against Temu, Temu cannot establish the lawsuit was a sham.  *See* Section VI.B.4, *infra*.

Dated: March 1, 2024

/s/ Michael D. Bonanno
William Burck
williamburck@quinnemanuel.com
Michael D. Bonanno
mikebonanno@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, District of Columbia 20005-3314
(202) 538-8000


Michael E. Williams (*pro hac vice*)
michaelwilliams@quinnemanuel.com
John B. Quinn (*pro hac vice*)
johnqunn@quinnemanuel.com
Kevin Y. Teruya (*pro hac vice*)
kevinteruya@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Andrew H. Schapiro (*pro hac vice*)
andrewschapiro@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400

*Attorneys for Defendants SHEIN
TECHNOLOGY LLC and ROADGET
BUSINESS PTE. LTD.*

46