**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WHALECO INC.,

        Plaintiff,

v.

SHEIN TECHNOLOGY LLC,
ROADGET BUSINESS PTE. LTD.,

        Defendants.

Case No. 1:23-cv-3706-TJK

**PLAINTIFF WHALECO INC.'S MEMORANDUM OF LAW IN OPPOSITION TO**
**<u>DEFENDANT SHEIN TECHNOLOGY LLC'S MOTION TO DISMISS</u>**

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

LEGAL STANDARD...........................................................................................................5

ARGUMENT ........................................................................................................................6

    I.    Temu Plausibly Pleads Allegations Establishing Article III Standing for Claims
        Against Shein Technology .......................................................................................6

    II.    Temu States Plausible Claims for Relief Against Shein Technology....................13

CONCLUSION...................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*Alison Lou LLC v. Shein Distrib. Corp.*,
   No. 23-cv-1268 (S.D.N.Y. Oct. 16, 2023), ECF No. 76 ..................................................... 9

*Am. Lib. Ass'n v. F.C.C.*,
   401 F.3d 489 (D.C. Cir. 2005) ......................................................................................... 12

*\*Am. President Lines, LLC v. Matson, Inc.*,
   633 F. Supp. 3d 209 (D.D.C. 2022) ................................................................................ 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................... 6, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................ 6

*Bonilla-Santiago v. BLB Privatized Housing, LLC*,
   2022 WL 990681 (D.D.C. Mar. 31, 2022) ...................................................................... 16

*Brown v. ABM Indus., Inc.*,
   2015 WL 7731946 (N.D. Ill. Dec. 1, 2015) .................................................................... 10

*Coubaly v. Cargill, Inc.*,
   610 F. Supp. 3d 173 (D.D.C. 2022) .......................................................................... 11, 12

*Covad Comms. Co. v. Bell Atl. Corp.*,
   407 F.3d 1220 (D.C. Cir. 2005) ...................................................................................... 19

*Davis v. Wells Fargo*,
   824 F.3d 333 (3d Cir. 2016) ........................................................................................... 13

*Doe I v. Apple Inc.*,
   2021 WL 5774224 (D.D.C. Nov. 2, 2021) ................................................................ 11, 12

*Ellis v. Holy Comforter St. Cyprian Cmty. Action Grp.*,
   153 F. Supp. 3d 338 (D.D.C. 2016) ................................................................................. 5

*Equal Rts. Ctr. v. Uber Techs., Inc.*,
   525 F. Supp. 3d 62 (D.D.C. Mar. 15, 2021) ..................................................................... 5

*Goodreau v. US Bank Trust Nat'l Ass'n*,
   2019 2601543 (N.D. Ala. June 25, 2019) ....................................................................... 14

*\*GTE New Media Servs., Inc. v. Ameritech Corp.*,
   21 F. Supp. 2d 27 (D.D.C. 1998) .............................................................................. 17, 19

*Hamilton v. State Farm Fire & Cas. Co.*,
   270 F.3d 778 (9th Cir. 2001) .......................................................................................... 19

*ICC Evaluation Serv., LLC v. Int'l Ass'n of Plumbing & Mech. Offs., Inc.*,
  2020 WL 1905132 (D.D.C. Apr. 17, 2020) ............................................................... 5

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  587 F. Supp. 2d 27 (D.D.C. 2008) ........................................................................... 6

*In re Vitamins Antitrust Litig.*,
  2001 WL 755852 (D.D.C. June 7, 2001) ......................................................... 10, 19

*In re Zinc Antitrust Litig.*,
  155 F. Supp. 3d 337 (S.D.N.Y. 2016) ..................................................................... 16

*Jung v. Ass'n of Am. Med. Colleges*,
  300 F. Supp. 2d 119 (D.D.C. 2004) .......................................................................... 6

*Klein v. Am. Land Title Ass'n*,
  926 F. Supp. 2d 193 (D.D.C. 2013) .......................................................................... 6

*Magdalena Mollmann v. Zoetop Bus. Co.*,
  No. 22-cv-4128 (C.D. Cal. Jan. 30, 2023), ECF No. 67-3 ................................... 3, 8

*Price v. Coll. Park Honda*,
  2006 WL 1102818 (D.D.C. Mar. 31, 2006) ....................................................... 15, 17

*Primax Recoveries, Inc. v. Lee*,
  260 F. Supp.2d 43 (D.D.C. 2003) ............................................................................. 6

*Quezada v. Marshall*,
  915 F. Supp. 2d 129 (D.D.C. 2013) ................................................................... 15, 17

*Robbins v. U.S. Dep't of Hous. & Urb. Dev.*,
  72 F. Supp. 3d 1 (D.D.C. 2014) ......................................................................... 11, 12

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer US LLP*,
  682 F.3d 1043 (D.C. Cir. 2012) .............................................................................. 15

*Rysewyk v. Sears Holdings Corp.*,
  2015 WL 9259886 (N.D. Ill. Dec. 18, 2015) .......................................................... 16

*Sheeran v. Blyth Shipholding S.A.*,
  2015 WL 9048979 (D.N.J. Dec. 16, 2015) ............................................................. 16

*Sparrow v. United Air Lines, Inc.*,
  216 F.3d 1111 (D.C. Cir. 2000) ................................................................................ 6

*United States ex rel. Keaveney v. SRA Int'l, Inc.*,
  219 F. Supp. 3d 129 (D.D.C. 2016) ................................................................... 15, 17

*Uzlyan v. Solis*,
  706 F. Supp. 2d 44 (D.D.C. 2010) .......................................................................... 18

*Vasseur v. Valdosta State Univ.*,
    2023 WL 2632804 (M.D. Ga. Mar. 24, 2023) ................................................................14

*WhaleCo Inc. v. Shein Tech. LLC*,
    No. 23-cv-3706 (D.D.C. Dec. 15, 2023), ECF. No. 12 .............................................8, 18

*Whitlock v. U.S. Dep't of Homeland Sec.*,
    2022 WL 424983 (D.D.C. Feb. 11, 2022) ....................................................................12

*Williams v. Lew*,
    819 F.3d 466 (D.C. Cir. 2016) ..............................................................................12, 13

*Wilson v. United States*,
    2024 WL 756804 (D.D.C. Feb. 23, 2024) ......................................................................5

**STATUTES AND RULES**

17 U.S.C. § 512(f) ..........................................................................................................7

L. Civ. R. 54.2 ...............................................................................................................9

DMCA .................................................................................................................passim

Fed. R. Civ. P. 8 .............................................................................................................6

Fed. R. Civ. P. 12(b)(1) ..........................................................................................5, 6, 13

Fed. R. Civ. P. 12(b)(6) ...............................................................................6, 13, 18, 20

Fed. R. Civ. P. 30(b)(6) ...............................................................................................3, 8

Sherman Act....................................................................................................10, 14, 19

## INTRODUCTION

The Court should deny Shein Technology LLC's ("Shein Technology") Motion to Dismiss the Complaint because Shein Technology prematurely demands that Plaintiff WhaleCo Inc. ("Temu") uncover the precise roles of Shein's wholly owned affiliates that Defendants themselves publicly have admitted are instrumental in carrying out Shein's U.S. strategy.  In its Complaint, Temu sufficiently alleges that Shein Technology and its parent, Roadget Business Pte. Ltd. ("Roadget"), have implemented Shein's overarching anticompetitive scheme to restrict competition from Temu and maintain higher prices and reduced options for U.S. consumers in the U.S. ultra-fast-fashion market.

Temu alleges that Defendants (defined as "Shein" or "Defendants" to include both Roadget and Shein Technology) "have transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the illegal Scheme throughout the United States and in this District specifically" and that "Shein Technology LLC has an office and employees located at 250 Massachusetts Avenue, NW, Washington, D.C., 20001."  Compl. ¶ 18; *see also id.* ¶¶ 19–20, 22. Temu also alleges that Defendants' "fraudulent DMCA campaign and the scheme to defraud the U.S. Copyright Office have been directed at, and have had the intended effect of, causing injury to persons residing in, located in, or doing business in this District," where Shein Technology is based.  *Id.*  And, although, prior to discovery, when the precise role of Shein Technology in the alleged conduct is known only to Defendants, Shein publicly described Washington, D.C. as one of only two "key offices" in the United States.[1]  Nor does Shein Technology dispute that it occupies

---

[1]  Exhibit A, Screenshot of Shein.com website page *Our Global Presence* from December 2, 2023, preserved via the Wayback Machine, available at https://web.archive.org/web/20231 202011354/https://www.sheingroup.com/about-us/our-global-presence/.

Shein's "key" Washington, D.C. office or that it has a registered agent in D.C.[2]  *See, e.g.*, Compl. ¶¶ 18–20, 22.

Shein Technology complains that Temu has not specified Shein Technology's exact role in Shein's scheme.  Not only is such parsing of Defendants' confidential organizational structures *not* Temu's burden at this stage, but Temu's Complaint *does* include factual allegations about aspects of the Shein business that are performed by Shein Technology.  These activities include, but are not limited to:  (a) Shein's monitoring of opportunities to prevent competition through sham intellectual property infringement enforcement—and its constant monitoring of Temu's platform specifically—which result in the copious DMCA notices Shein sends to Temu (Compl. ¶¶ 36, 40–41, 180); (b) Shein's use of artificial intelligence and other technology to advance its on-demand, ultra-fast-fashion business model (*id.* ¶¶ 112, 140); and (c) Shein's lobbying campaigns in Washington, D.C. (*id.* ¶¶ 3, 7, 116, 127).  And this is just what is known to Temu from public information (including Shein Technology's own statements), without the benefit of discovery.  Shein Technology publicly touts itself as the technology company that "supports SHEIN Distribution Corporation," which "distributes SHEIN's products in the U.S."[3]

Moreover, the Complaint contains numerous substantial and detailed allegations about Defendants' dominance in the U.S. ultra-fast-fashion market and Defendants' serial disregard for the intellectual property of others on its U.S. e-commerce marketplace.  Compl. ¶¶ 3, 5, 9, 13, 28–29, 39, 112, 130, 139, 174.  Shein has admitted Shein Technology's key role in carrying out this U.S. strategy.  Specifically, in one of many copyright infringement litigations against Shein, two

---

[2]  Exhibit B, Record of Shein Technology LLC's registered agent in Washington D.C., recorded with the government of the District of Columbia, available for lookup at https://corponline.dcra.dc.gov/.

[3]  Exhibit C, Shein Technology LinkedIn Page, available at https://www.linkedin.com/company/shein-technology (last visited Apr. 5, 2024).

of Shein's subsidiaries, Zoetop Business and Shein Distribution Corporation ("SDC"), both identified Mark Aitken, the Vice President of U.S. Public Affairs at Shein Technology, in their initial disclosures as one of two Shein employees *most likely* to have discoverable information:

> Mark Aitken, Vice President, U.S. Public Affairs, Shein Technology LLC.  Can be contacted through counsel for Zoetop.
>
> Subject of Information:  Products sold in the United States on the us.shein.com and us.romwe.com websites **and the markets for those goods**; sales of the allegedly infringing project; **the screening process to detect and prevent potential infringements**, Plaintiff's claims against [Zoetop/SDC]; and [Zoetop/SDC]'s defenses and the factual bases therefor.[4]

In that same case, both Zoetop Business and SDC also designated Mr. Aitken as their Rule 30(b)(6) corporate representative to give deposition testimony about their businesses.  *See* Exhibit D at 70–71.  He testified extensively about the Shein business, including about the process by which suppliers upload photos to Shein's vendor system and about communications between Shein and their vendors.  *See id.* at 70–84.

In light of the foregoing admissions and statements by Shein, Temu filed its Complaint against two Shein entities that Temu discerned were likely to have direct involvement with the anticompetitive scheme at issue in this lawsuit.  Discovery will reveal the Shein Defendants' respective roles, and Shein Technology will have a full and fair opportunity to object to any discovery requests that it believes are not relevant to its business operations or its hundreds of employees in the District of Columbia and elsewhere in the United States.  *See* Exhibit C (indicating that Shein Technology has between 201 and 500 employees).

---

[4]  Exhibit D, Defs. Shein Distribution Corp.'s and Zoetop Bus. Co., Ltd.'s Initial Disclosures at 22–23 and 31–32, *Magdalena Mollmann v. Zoetop Bus. Co.*, No. 22-cv-4128 (C.D. Cal. Jan. 30, 2023), ECF No. 67-3 (emphasis added).  *See, e.g.*, Compl. ¶¶ 34–54, 71–101 (allegations regarding Shein's conduct with respect to supposed intellectual property infringement); *see also id.* ¶¶ 133–41 (allegations regarding the relevant product market for antitrust claims).

Shein Technology seeks dismissal primarily on the basis that, in its view, the words "Shein Technology" do not appear enough times in the Complaint and that Temu does not sufficiently "explain" the conduct specifically attributable to Shein Technology.  MTD at 1–2.  But this criticism is disingenuous.  Roadget was referenced by name 16 times in the Complaint, yet Roadget did not mention that fact in its otherwise kitchen-sink motion to dismiss.  This is because the Complaint, which mentions "Shein" over 900 times, defines "Shein" to include both Roadget and Shein Technology, and because only Shein, without discovery, is in possession of information defining the precise roles of each of its corporate affiliates in Shein's anticompetitive campaign in the United States.  Compl. at 1.

More concerningly, the attempts by Shein Technology in its Motion to downplay its role in the alleged conduct appear to have been accompanied by real-time changes to Shein's website made *after* the Complaint was filed—and apparently in conjunction with Shein's Motion to Dismiss as a litigation tactic.  Interestingly, Shein Technology's Washington, D.C. office was listed as one of Shein's "key offices" on Shein's website at the time the Complaint was filed,[5] but now Shein has modified the wording on its website to say that Shein has an "office" in D.C., which suggests that Shein is now seeking to downplay the importance of its D.C. office.[6]  Shein

---

[5]   In early December 2023, before the Complaint was filed, Shein's website included large map graphics pinpointing Washington, D.C. as one eight "key offices."  Exhibit A.  Shein subsequently removed the map graphic showing D.C. as a key office, presumably to downplay the importance of its D.C. office, but still referred in text to D.C. as a "key" office, even after the Complaint was filed.  *See, e.g.*, Exhibit E, Screenshot of Shein.com website page *Our Global Presence* from January 1, 2024, preserved via the Wayback Machine, available at https://web.archive.org /web/20240101140529/https://www.sheingroup.com/about-us/our-global-presence/.    However now, in conjunction with its Motions to Dismiss, Shein has changed its website again to remove any reference to D.C. being a "key" office.  Exhibit F, *Our Global Presence*, SHEIN.com, available at https://www.sheingroup.com/about-us/our-global-presence/ (last visited Apr. 5, 2024).

[6]   Exhibit F (no longer identifying Washington, D.C. as a one of Shein's "key" global offices).

Technology should not be permitted to bolster its Motion to Dismiss by revamping its website—in response to Temu's allegations—to conceal Shein Technology's role in Shein's anticompetitive scheme.  As alleged in the Complaint, one key element of Shein's anticompetitive playbook has been to use its confusing and shifting corporate structure to make it difficult for victims of Shein's IP abuses and other misconduct to successfully enforce U.S. intellectual property laws against Shein.  Compl. ¶ 125; *see also id.* ¶¶ 117–29.

For these reasons and the reasons set forth below, the Court should deny Shein Technology's Motion to Dismiss.

## LEGAL STANDARD

***Rule 12(b)(1).***  A motion to dismiss for lack of standing challenges the Court's subject matter jurisdiction and is reviewed under Federal Rule of Civil Procedure 12(b)(1).  *See Ellis v. Holy Comforter St. Cyprian Cmty. Action Grp.*, 153 F. Supp. 3d 338, 340–41 (D.D.C. 2016).  On a Rule 12(b)(1) motion, "the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff."  *ICC Evaluation Serv., LLC v. Int'l Ass'n of Plumbing & Mech. Offs., Inc.*, 2020 WL 1905132, at *4 (D.D.C. Apr. 17, 2020).  A court may also "consider documents outside of the pleadings to assure itself that it has jurisdiction."  *Wilson v. United States,* 2024 WL 756804, at *2, 4 (D.D.C. Feb. 23, 2024) (referencing other cases brought by plaintiff); *see also Equal Rts. Ctr. v. Uber Techs., Inc.*, 525 F. Supp. 3d 62, 81 n.8 (D.D.C. Mar. 15, 2021) (stating the court "is permitted to review materials outside of the pleadings when it considers standing in the context of a motion to dismiss under Rule 12(b)(1)," if those materials are attached to the parties' briefs).  Factual allegations need only be asserted, not proven, at the pleading stage to survive a Rule 12(b)(1) motion to dismiss.  *See Primax Recoveries, Inc. v. Lee*, 260 F. Supp.2d 43, 47 (D.D.C. 2003).

*Rule 12(b)(6).* Dismissal under Rule 12(b)(6) is appropriate only if the Court finds that the allegations in the complaint, when accepted as true, do not contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court "must treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (cleaned up); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 587 F. Supp. 2d 27, 31–32 (D.D.C. 2008) (holding that court "must construe the complaint liberally in the plaintiffs' favor") (internal quotations omitted). "Antitrust claims, like all other claims, are subject only to the notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure." *Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 159 (D.D.C. 2004).

## ARGUMENT

### I. Temu Plausibly Pleads Allegations Establishing Article III Standing for Claims Against Shein Technology

To plead Article III standing, Temu is required to allege only that it suffered an "injury in fact" that is concrete and particularized, actual and imminent, and fairly traceable to the alleged anticompetitive scheme that Shein Technology perpetuated, and that a favorable decision of this Court will redress that injury. *See Klein v. Am. Land Title Ass'n*, 926 F. Supp. 2d 193, 198 (D.D.C. 2013). Temu has sufficiently pleaded Article III standing: Temu has alleged that it has suffered an injury-in-fact (Compl. § VI (Injury to Temu, Consumers, and Competition)), and that this injury is fairly traceable to the multi-pronged, anticompetitive scheme undertaken by Shein Technology, together with its parent company Roadget, that was thoroughly detailed in the Complaint. *See*

*generally id.* Temu clearly defined "Shein" to include both Shein Technology and Roadget (*see id.* at 1), and *all* of Temu's allegations are directed at Shein.

Furthermore, Temu's Complaint includes specific factual allegations concerning business practices performed by Shein Technology that Shein cannot deny, in view of its own previously issued public statements: Temu pleaded that Shein has improperly issued more than 33,000 sham DMCA takedown notices, asserting infringement by Temu, in violation of 17 U.S.C. § 512(f) (Compl. ¶¶ 36, 40–41); that Shein utilizes artificial intelligence and other technology to advance its business model, identifying products to manufacture and sell regardless of others' copyrights (¶¶ 112, 140); that Shein has engaged in conduct antithetical to the antitrust laws to retain its dominance in the ultra-fast-fashion market (¶ 5); and that Shein engages in lobbying in Washington, D.C., to further its agenda in closely related areas (¶¶ 3, 7, 116, 127). While discovery will reveal each Defendant's precise role in the conduct alleged in the Complaint, publicly available information, including statements by Shein entities, link Shein Technology to all of these activities and allegations.

For example, in one of many intellectual property infringement litigations asserted against Shein, *Mollmann v. Zoetop Business Co., Ltd. and Shein Distribution Corporation*, Zoetop and SDC submitted initial disclosures identifying just two individuals from Shein entities "likely to have discoverable information . . . that [Zoetop/SDC] may use to support its claims or defenses." Exhibit D at 23, 31. One of the two Shein employees identified was Mark Aitken, the Vice President of U.S. Public Affairs at Shein Technology. And according to those Shein entities, the subject matter about which Mark Aitken was knowledgeable included "[p]roducts sold in the United States on us.shein.com and us.romwe.com websites and the markets for those goods; *sales of the allegedly infringing product; screening processes to detect and prevent potential*

*infringements*; Plaintiff's claims against [Zoetop/SDC]; and [Zoetop/SDC]'s defenses and the factual bases therefor." *Id.* at 23–24, 31–32 (emphasis added). By Shein's own submission to the court in *Mollmann*, Mr. Aitken, a current [7] employee of Shein Technology, is the Shein representative most likely to have, and was identified as a custodian for, the same information critical to multiple intellectual property claims and all antitrust claims brought against Shein Technology and Roadget in this litigation. *Id.*

Furthermore, both of the above-referenced Shein companies, Zoetop and SDC, designated Mr. Aitken as their Rule 30(b)(6) corporate representative, and he was deposed in that role. *Id.* at 70–71. The brief excerpt of his deposition testimony publicly available on the *Mollmann* docket indicates Mr. Aitken's extensive knowledge of and engagement with Shein's business relevant to this litigation, including, for example, communications between Shein and their vendors and how and when images uploaded by vendors are scanned for potentially infringing content. *See id.* at 70–84.

In another case, in a motion filed jointly by four Shein entities, SDC, Roadget, Zoetop, and Shein Technology, these Shein entities confirmed that "Shein Tech, for its part, provides certain technology and data processing services to SDC [Shein Distribution Corporation] and Roadget, including security infrastructure, risk management, and data privacy functions, in addition to communications, public affairs, and ESG-related functions." Exhibit G, Mem. of Law in Supp. of Defs.' Mot. to Require Pl. to Post Bond Pursuant to L. Civ. R. 54.2 at 4, *Alison Lou LLC v. Shein Distrib. Corp.*, No. 23-cv-1268 (S.D.N.Y. Oct. 16, 2023), ECF No. 76.

---

[7] Mark Aitken accepted service of the Complaint in this case on behalf of Shein Technology. *See* Affidavit of Service, *WhaleCo Inc. v. Shein Tech. LLC*, No. 23-cv-3706 (D.D.C. Dec. 15, 2023), ECF. No. 12 (indicating that Mark Aitken was served on behalf of Shein Technology LLC).

But similar to the tack Shein took when it revised its website statements about Shein's "key office" in Washington, D.C., Shein Technology attempts to escape this litigation by adjusting the facts in the record and making representations to this Court that contradict the statements Shein entities have made in other litigations.  In a declaration submitted by Peter Pernot-Day in Support of Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction, Mr. Pernot-Day states that, "STL [Shein Technology] has its own business operations and is not involved in the enforcement of copyright rights owned by SHEIN.  To my knowledge, [Shein Technology] has never sent any DMCA takedown notices to any entity, including Temu."  Declaration of Peter Pernot-Day (ECF No. 56-3), ¶ 9.  But this is inconsistent with statements made by Shein subsidiaries Zoetop Business and SDC in *Mollman* that Mr. Aitken was knowledgeable about "screening processes to detect and prevent potential infringements" relating to "products sold in the United States on us.shein.com and us.romwe.com websites."  Exhibit D at 23–24, 31–32.  Shein Technology's opportunistic representation in this litigation that it "is not involved in the enforcement of copyright rights" should not be taken at face value when it previously presented Shein Technology's Vice President of U.S. Public Affairs as the most knowledgeable person at Shein about its "screening processes to detect and prevent potential infringements."  This is especially the case given Shein's *modus operandi* of taking inconsistent positions in litigations to avoid liability in suits brought by victims of Shein's IP abuses and other misconduct.  Compl. ¶ 125; *see also id.* ¶¶ 117–29.

Furthermore, apart from Shein's own statements and Temu's allegations that show Shein Technology's direct involvement in the relevant conduct, courts in this Circuit have confirmed that the acts of Shein Technology as the subsidiary, and Roadget as the parent, can be considered as one enterprise for purposes of antitrust violations.  *See, e.g.*, *In re Vitamins Antitrust Litig.*, 2001

WL 755852, at *3 (D.D.C. June 7, 2001) (emphasis added) ("[T]he coordinated activity of a parent and its wholly owned subsidiary *must* be viewed as that of a single enterprise for purposes of § 1 of the Sherman Act.") (emphasis added); *Brown v. ABM Indus., Inc.*, 2015 WL 7731946, at *5 (N.D. Ill. Dec. 1, 2015) (denying 12(b)(1) motion to dismiss against parent and subsidiary where plaintiff alleged that the parent—with its subsidiaries—"implemented, controlled, and enforced" the policy at the heart of plaintiff's claims).

Shein Technology also:  (1) directs its business activities to D.C. and markets and sells to consumers here; (2) dishonestly avails itself of U.S. intellectual property laws which are anchored in D.C; and (3) carries out Shein's efforts to lobby and influence U.S. regulators, which are primarily focused in Washington, D.C.  *See, e.g.*, Compl. ¶¶ 3, 7, 18–22, 116, 127 (alleging Shein's lobbying efforts, D.C.-directed business, and use of U.S. intellectual property laws); *see also* Exhibit H, Ltr. from Donald Tang, Executive Vice Chairman, SHEIN, to Stephen Lamar, American Apparel & Footwear Association, President and CEO, July 24, 2023, available at https://www.sheingroup.com/wp-content/uploads/2023/07/SHEIN-De-Minimis-AAFA-Letter-FINAL-SIGNED-.pdf.  Shein Technology does not dispute that the Complaint directs all allegations at Shein Technology.  *See* MTD at 2 (noting "the Complaint is filled with allegations about 'Shein' and 'Defendants' collectively").  Nor does Shein Technology argue against the fact that Temu pleaded an injury-in-fact fairly traceable to conduct undertaken by "Shein" entities.  *Id.* at 2–5.  Shein Technology also does not dispute that it is a wholly owned subsidiary of Roadget. *Id.* at 2.  Instead, Shein Technology takes issue with whether the allegations attribute conduct to Shein Technology explicitly, arguing that Temu's burden under Article III is to "explain how any actions or inactions by Shein Technology"—separate and apart from any actions or inactions by Roadget—"led to any alleged harm."  *Id.* at 5.

But Shein Technology cites no authority that requires a plaintiff to plead "or explain" the respective roles of the parent company and its wholly owned corporate subsidiary in an anticompetitive scheme or to identify whether the parent or the subsidiary was the primary actor for each and every allegation.  In fact, none of Shein's cited decisions contain factual analyses that are relevant or applicable to the circumstances here.

First, several of Shein Technology's cited cases granted dismissal for the unremarkable reason that the plaintiff pleaded *no* factual allegations that the defendants engaged in the alleged conduct at all—these include two cases in which plaintiffs pleaded only general allegations that applied to an entire industry.  *See Coubaly v. Cargill, Inc.*, 610 F. Supp. 3d 173, 180–81 (D.D.C. 2022) (plaintiffs failed to plead any factual allegations linking the defendants to the specific cocoa plantations where the victims of child slavery worked, and only pleaded "[g]eneral industry-wide allegations" which the court found lacked the requisite specificity); *Doe I v. Apple Inc.*, 2021 WL 5774224, at *6–8 (D.D.C. Nov. 2, 2021) (plaintiffs pleaded no facts that defendants were directly responsible for harm to plaintiffs at mining sites; plaintiffs essentially pleaded that defendants "participate[d] in what Plaintiffs themselves describe as the global 'cobalt supply chain'" though there were no factual allegations that "every individual in the entire global supply chain—let alone one or more of the Defendants—controlled the mines or conditions that led to Plaintiffs' injuries"); *Robbins v. U.S. Dep't of Hous. & Urb. Dev.*, 72 F. Supp. 3d 1, 6–7 (D.D.C. 2014) (plaintiff asserted the U.S. Department of Housing and Urban Development ("HUD") caused her condition of homelessness but alleged that the cause of the injury stemmed from a disagreement among plaintiff, her landlord, and her local public housing authority, not HUD).

Second, in two other of Shein Technology's cited cases, the court granted dismissal because the allegations themselves reflected that the defendant did not cause plaintiff's injury, or

that the defendant's conduct would not cause ongoing or future injury. *See Whitlock v. U.S. Dep't of Homeland Sec.*, 2022 WL 424983, at *3–4 (D.D.C. Feb. 11, 2022) (plaintiff filed a petition to compel the U.S. Department of Homeland Security ("DHS") to process a visa application, but plaintiff lacked standing because DHS already completed its role in processing the application 18 months prior); *Williams v. Lew*, 819 F.3d 466, 474 (D.C. Cir. 2016) (plaintiff sought injunctive relief but failed to factually allege any ongoing or future injury).

Third, in another decision cited by Shein Technology, the petitioners at oral argument suggested that their standing was "self-evident" and "simply pointed the court to the administrative record" in post-hearing submissions. *Am. Lib. Ass'n v. F.C.C.*, 401 F.3d 489, 491–92, 495 (D.C. Cir. 2005). The D.C. Circuit found that belief of self-evident standing to be reasonable, but nevertheless instructed that "petitioners whose standing is challenged should be more precise in their response, no matter how cryptic the challenge may be." *Id.* at 495. This decision is inapposite because, despite Shein's cryptic challenge, the Complaint here, and Temu's Opposition, identify the bases for Article III standing with specificity.

Temu's factual allegations do not have any of the defects that resulted in dismissal in Shein Technology's cited cases: Temu's factual allegations are not directed toward the entire ultra-fast-fashion industry without reference to Shein's conduct, as in *Coubaly* or *Doe I*; Temu's pleadings identify Shein Technology as a direct participant in the challenged conduct, unlike in *Robbins*; Temu makes no allegation that Shein Technology's role was "complete" or that the harm was resolved at some time before the alleged conduct took place, as in *Whitlock*; and Defendants do not argue, nor could they, that the factual allegations, if accepted as true, are sufficient to establish that there will be ongoing injury to Temu, as in *Williams*.

Shein Technology's apparent position that it was not involved in the anticompetitive scheme is an attack on the merits of Temu's claims, not a challenge to the Court's subject matter jurisdiction. Accordingly, Shein Technology's Motion is properly considered at most under Rule 12(b)(6). Where, as here, a Rule 12(b)(1) motion focuses on the Article III standing aspect of subject matter jurisdiction, the proper inquiry is simply whether the *plaintiff* is the correct party to bring the claims; Rule 12(b)(1) does not care whether plaintiff has sued the right *party*. *See Davis v. Wells Fargo*, 824 F.3d 333, 338 (3d Cir. 2016) (holding that defendant's motion to dismiss plaintiff's claim for lack of standing—for suing defendant instead of defendant's wholly owned subsidiary—was an attack on the merits of plaintiff's claim and should be evaluated under 12(b)(6) not 12(b)(1)).

Because Temu sufficiently pleaded that it suffered actual injury as a result of Shein Technology's involvement in the overall scheme, Temu has established Article III standing for its claims against Shein Technology and Shein Technology's Motion to Dismiss pursuant to Rule 12(b)(1) must be denied.

## II.     Temu States Plausible Claims for Relief Against Shein Technology

Shein Technology alternatively argues that Temu failed to state a plausible claim for relief against Shein Technology because Temu did not adequately explain Shein Technology's role in the case. MTD at 5–7. Not only did Temu adequately allege Shein Technology's role, but Shein Technology's contention that Temu must state with specificity each corporate entity's responsibility for each alleged act is inaccurate. The proper standard is whether the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Temu's allegations regarding improper DMCA conduct, use of artificial intelligence, lobbying efforts, and anticompetitive conduct directed at the ultra-fast-fashion market are sufficient to allow the Court to draw the

reasonable inference that Shein Technology, whose business operations touch all those areas, is liable for violations of the intellectual property, antitrust, and unfair competition laws.

Temu has plausibly alleged sufficient facts to state a claim against Shein Technology. Temu's Complaint comprises nearly 100 pages of allegations against Shein—which apply equally to *both* Roadget and Shein Technology.  And, as discussed above (*see supra* Section I), Shein Technology's own public statements[8] confirm its likely involvement in the conduct at issue in Temu's Complaint, such as baseless DMCA takedown notices and copyright litigation, both of which begin with Shein Technology's monitoring for potential infringement, and specifically monitoring of Temu's platform.  *See* Compl. ¶ 180.  It is not Temu's burden to prove definitively the division of corporate responsibilities between a parent company and its subsidiary—both of which are named as parties—and Shein Technology does not cite a single case supporting dismissal in those circumstances.  Further, Shein Technology did not address *any* of Temu's numerous substantive allegations, and its Motion must be denied on this basis alone.  *Vasseur v. Valdosta State Univ.*, 2023 WL 2632804, at *7 (M.D. Ga. Mar. 24, 2023) (denying motion to dismiss as to claims defendant did not address); *Goodreau v. US Bank Trust Nat'l Ass'n*, 2019 2601543, at *10 (N.D. Ala. June 25, 2019) (denying motion to dismiss as to two sets of claims where defendants did not fully address the corresponding allegations because "the court can only address arguments presented to it").

---

[8]   *See* Exhibit G at 4 (stating that Shein Technology "provides certain technology and data processing services to SDC [Shein Distribution Corporation] and Roadget, including security infrastructure, risk management, and data privacy functions, in addition to communications, public affairs, and ESG-related functions"); Exhibit D at 23, 31 (identifying Mark Aitken, Vice President of Shein Technology, as having knowledge of "[p]roducts sold in the United States on the us.shein.com and us.romwe.com websites and the markets for those goods; sales of the allegedly infringing product; the screening processes to detect and prevent potential infringements").

None of the cases Shein Technology cites support the propositions for which they are cited. While Shein Technology argues that the cited cases show that dismissal is appropriate where a defendant's role is not properly explained, in fact each case merely held that a complaint that contains no, or only a few, factual allegations about the defendant is insufficient to withstand a Rule 12(b)(6) motion. *See, e.g.*, *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer US LLP*, 682 F.3d 1043, 1048–50 (D.C. Cir. 2012) (plaintiff's total of six allegations against defendant law firm in its representation of the nation of Grenada in international arbitration were insufficient to sustain a RICO claim that the law firm conspired to prevent plaintiff from obtaining an exclusive oil and gas contract); *United States ex rel. Keaveney v. SRA Int'l, Inc.*, 219 F. Supp. 3d 129, 150–51 (D.D.C. 2016) (dismissing complaint as to one defendant (Triton) where plaintiffs alleged that defendants (Triton and SRA) made false statements to the government to secure a Department of Defense contract because plaintiffs "only detail[ed] misrepresentations and omissions allegedly made by SRA," and merely stated that it was "in collusion with Triton"); *Quezada v. Marshall*, 915 F. Supp. 2d 129, 134 (D.D.C. 2013) (dismissing § 1983 claim against mayor of Washington D.C.—where plaintiff failed to allege that the mayor violated plaintiff's federal rights or failed to act—in suit against District of Columbia Housing Authority and The Community Partnership for the Prevention of Homelessness for payments that plaintiff alleged he should have received for renting apartments in the building he owned); *Price v. Coll. Park Honda*, 2006 WL 1102818, at *8 (D.D.C. Mar. 31, 2006) (dismissing a *pro se* plaintiff's complaint—claiming violations of the Equal Protection Clause of the Fourteenth Amendment, as well as civil rights under the Constitution—as to fourteen of fifteen defendants (car dealerships and healthcare providers) because several defendants were not mentioned at all in plaintiff's allegations concerning various

disputes regarding credit and banking issues, and the allegations as to the other defendants did not put them on notice of the claims against them).

And Shein Technology's reference to "group pleading" (MTD at 6–7) is another disingenuous attempt to distract and confuse the issues. As discussed above, in its Complaint, Temu pleads facts specific to Shein Technology, and Shein's own statements support Temu's allegations. The cases Shein Technology cites on group pleading (*id.* at 5–6) are distinguishable as those cases did not deal with the same type of parent-subsidiary relationship at issue here. Further, in *Bonilla-Santiago v. BLB Privatized Housing, LLC* (*see id.* at 6), the court found that plaintiffs adequately pleaded connectedness of all defendants notwithstanding the fact that defendants' own statements made it "difficult for Plaintiffs to discern which company was responsible for specific instances of alleged harm." 2022 WL 990681, at *3–4 (D.D.C. Mar. 31, 2022). The court also stated that "[a]t the motion to dismiss stage, Plaintiffs cannot be penalized for confusion caused by Defendants' own conduct." *Id.* at *3. The remaining cases Shein Technology cites are similarly inapposite. *See, e.g.*, *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 384–85 (S.D.N.Y. 2016) (finding improper group pleading where plaintiffs merely referred to one entity—"Goldman," "JPMorgan," or "Glencore"—to refer to all trading and warehouse operations without identifying the unique entities involved in those operations, and where plaintiffs had already had the opportunity to amend the complaint and fix the pleading deficiencies); *Sheeran v. Blyth Shipholding S.A.*, 2015 WL 9048979, at *3–4 (D.N.J. Dec. 16, 2015) (granting defendant's motion to dismiss because plaintiff did not *in any way* account for differences in liability for the different defendants, in a case not dealing with parent-subsidiary relationship); *Rysewyk v. Sears Holdings Corp.*, 2015 WL 9259886, at *7 (N.D. Ill. Dec. 18, 2015) (dismissing *only one* of three defendants where that defendant-subsidiary's business purpose had nothing to do with the conduct

at issue in the complaint—concerning product liability—but finding that the complaint contained adequate allegations about the other subsidiary, and taking no issue with referring to the three defendants by one name—"Sears").

In three other cases Shein Technology cites (MTD at 6),[9] the defendant referenced in Shein Technology's citation was a stand-alone defendant. That is, unlike Shein Technology, which—as Temu alleges—is a subsidiary who has participated in sham intellectual property enforcement and an anticompetitive scheme together with its parent, Roadget. Specifically, in *Price v. Coll. Park Honda*, some of the defendants were not mentioned at all in the complaint. 2006 WL 1102818, at *8 (D.D.C. Mar. 31, 2006). This is not the case here, where Temu has clearly defined the "Shein" Defendants as Roadget *and* Shein Technology and alleged that Shein employed a multifaceted, anticompetitive scheme directed at Temu. *See* Compl. at 1, § III.

Moreover, it is especially inappropriate to dismiss a subsidiary before discovery has taken place to ascertain the subsidiary's role in the conduct alleged. *See Am. President Lines, LLC v. Matson, Inc.*, 633 F. Supp. 3d 209, 234–35 (D.D.C. 2022) (denying motion to dismiss a subsidiary where the complaint alleged that a number of incidents implicated that subsidiary's business— because it could be "reasonably inferred from the context of the complaint that these acts were allegedly undertaken by, or at least involved, [the subsidiary]"—until discovery proved otherwise); *GTE New Media Servs., Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27, 32 n.2 (D.D.C. 1998) (stating that, for one defendant, if, "*after discovery*," "one of its subsidiaries is *not* considered a single enterprise with its parent, then the defendant may resurrect its motion that acts of a subsidiary in question are not attributable to its parent") (emphasis added).

---

[9]  *United States ex rel. Keaveney v. SRA Int'l, Inc.*, 219 F. Supp. 3d 129 (D.D.C. 2016); *Quezada v. Marshall*, 915 F. Supp. 2d 129 (D.D.C. 2013); *Price v. Coll. Park Honda*, 2006 WL 1102818 (D.D.C. Mar. 31, 2006).

Shein Technology cannot reasonably deny that it is a wholly owned subsidiary of Roadget as Shein Technology listed Roadget as its parent company in the corporate disclosure statement it filed in this case.  Certificate Rule LCvR 26.1, *WhaleCo Inc. v. Shein Tech. LLC*, No. 23-cv-3706 (D.D.C. Jan. 22, 2024), ECF. No. 38.  And it is not Temu's burden to parse out the specific corporate responsibilities of Roadget and its subsidiary, Shein Technology.

Nevertheless, Shein Technology is involved in and supports the overall processes by which Shein monitors fashion trends using algorithms, machine learning, and artificial intelligence, enters into contracts with suppliers, and manufactures and imports clothing into the United States, all of which are at issue in Temu's Complaint.  Moreover, as noted above, Shein Technology's very recent statements about its business confirm its central role in the anticompetitive scheme. *See* Exhibit G at 4 (stating that Shein Technology "provides certain technology and data processing services to SDC [Shein Distribution Corporation] and Roadget, including security infrastructure, risk management, and data privacy functions, in addition to communications, public affairs, and ESG-related functions"); Exhibit D at 23, 31 (identifying Mark Aitken, the Vice President of Shein Technology, as having knowledge of "[p]roducts sold in the United States on the us.shein.com and us.romwe.com websites and the markets for those goods; sales of the allegedly infringing product; the screening processes to detect and prevent potential infringements").  These functions of Shein Technology are the exact aspects of the Shein business at issue in Temu's Complaint.  The Court can, and should, consider Shein Technology's statements in deciding this Motion to Dismiss.  *See Uzlyan v. Solis*, 706 F. Supp. 2d 44, 55 & n.5 (D.D.C. 2010) (explaining that "[i]n deciding a Rule 12(b)(6) motion, a court may take judicial notice of public records from other proceedings," and referencing plaintiff's citation to a prior hearing transcript before an Administrative Judge) (citations omitted); *see also Covad Comms. Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir.

2005) (permitting judicial notice of facts in public records of other proceedings). In addition, Shein Technology cannot be permitted to take inconsistent positions about its role in the Shein business in order to use its involvement to its advantage in one case while feigning non-involvement in Shein's anticompetitive scheme in this case.[10]

In any event, as discussed above, *see supra* Section I, the acts of Shein Technology as the subsidiary, and Roadget as the parent, can be considered one enterprise for purposes of antitrust violations. *See In re Vitamins Antitrust Litig.*, 2001 WL 755852, at *3; *GTE New Media Servs.*, 21 F. Supp. 2d at 32 n.2 (concluding that "the coordinated activities of a parent and its wholly owned subsidiaries are viewed as that of a single enterprise for Sherman Act violations.").

Shein Technology also unpersuasively claims that Temu's allegations "do not even explain what Shein Technology does and barely establish where Shein Technology has an office." MTD at 6 & n.2. Shein cites no authority establishing that this is Temu's burden at the pleading stage. Temu's Complaint does not have to explain Shein Technology's business; the Complaint must, and did, contain allegations that Shein Technology, located at 250 Massachusetts Avenue, NW, in Washington, D.C. (*see* Compl. ¶ 18), violated Temu's intellectual property rights (*see id.* § IV), and launched an anticompetitive scheme to weaken Temu's position in the ultra-fast-fashion market (*see id.* § III). In any case, Shein itself published on its website that its Shein Technology D.C. office was a "key" global office for Shein—before it removed that language *after* the filing of Temu's Complaint. Moreover, Shein has thoroughly availed itself of the lobbying opportunities

---

[10] "The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001).

in D.C. and cannot now be allowed to claim that D.C. is not an important, or "key," Shein office. Compl. ¶¶ 3, 7, 116, 127.

Temu pleaded allegations sufficient to sustain a claim against Shein Technology, namely, that Shein Technology is a part of the overall anticompetitive scheme perpetuated by "Shein" as a collective entity. Compl. ¶ 18. Shein Technology's Motion to Dismiss under Rule 12(b)(6) must therefore be denied.

## CONCLUSION

For the reasons set forth above, the Court should deny Shein Technology's Motion to Dismiss.

Date: April 5, 2024                    Respectfully submitted,

*/s/ J. Mark Gidley*
J. Mark Gidley (D.C. Bar No. 417280)
Anna Naydonov (D.C. Bar No. 980910)
Michael J. Songer (D.C. Bar No. 453727)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 637-6197
Fax: (202) 639-9355
mgidley@whitecase.com
anna.naydonov@whitecase.com
michael.songer@whitecase.com

Jack E. Pace III (*pro hac vice*)
Michael Hamburger (*pro hac vice*)
Holly Tao (*pro hac vice*)
Rosie Norwood-Kelly (D.C. Bar No. 1780519)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8520
Fax: (212) 354-8113
jpace@whitecase.com
michael.hamburger@whitecase.com
holly.tao@whitecase.com

rosie.norwood-kelly@whitecase.com

*Counsel for Plaintiff WhaleCo Inc.*